## BLANEY v. HANKS *et al.*

1. LIEN OF JUDGMENT. When transcripts of a judgment rendered by a justice of the peace were taken and one filed in the office of the Clerk of the District Court in the county in which it was rendered, and the other was filed in the office of the Clerk of the District Court in another county, in which lands owned by the judgment defendant were situated; after which an execution was issued from the office of the Clerk of the District Court of the county first mentioned, which was levied upon the lands, it was held:

    1. That the filing of the last transcript in the county in which the land was situated did not create a lien upon the land.

    2. That no lien attached to said land by reason of such judgment before the levy of the execution.

    3. That the only method of creating a lien of a judgment rendered by a justice of the peace on lands situated in another county, is by filing a transcript of the judgment in the office of the Clerk of the District Court of the county in which it was rendered, and by the filing a transcript of the judgment and the memorandum in the District Court in the office of the Clerk of the District Court of the county in which the lands are situated.

2. CANCELING OF DEED: RELIEF IN EQUITY. While as a general rule the canceling of a deed does not revest the property which has once passed under it, a court of equity will not enforce the lien of a judgment, rendered after such cancellation, against the vendee named in the destroyed

deed, if the cancellation was made in good faith by the parties, and with no intention to defraud creditors.

3. JUDGMENT LIEN ON REAL INTEREST. The lien of a judgment attaches to the *interest* of the judgment defendant in the title to real estate, and not to the naked legal title without any equitable interest.

*Appeal from Lee District Court.*

MONDAY, DECEMBER 29.

BILL in chancery to quiet and confirm the title to certain real estate. Upon the final hearing the bill was dismissed, and the plaintiff appeals.

*J. M. Beck* for the appellant, contended that the filing of a transcript of the judgment rendered by the justice in Henry county, in the office of the Clerk of the District Court of Lee county caused it to attach as a lien on the real estate in said county. Code of 1851, §§ 2487, 2320. 2. The cancellation and destruction of the deed from Sheldon to Hanks did not divest Hanks of his title to the land, and did not reconvey it to Sheldon. *McGinnis* v. *McCollough,* Gilb. Eq. R., 235; *Roe* v. *The Archbishop of York,* 6 East., 86; *Leech* v. *Leech,* 2 Ch. R., 52; 4 Cr., 93, Title, 32, ch. 7, § 7; *Botsford* v. *Morehouse et al.,* 4 Conn., 55; *Gilbert* v. *Bulkley,* 5 Id., 262; *Chessmen* v. *Whittimore,* 23 Pick., 234; *Raiker* v. *Sharp,* 5 Blackf., 187; *Connelly* v. *Doe,* 8 Id., 320; *Orth* v. *Jennings,* Id., 430; *Raynor* v. *Wilson,* 6 Hill, 471; *Fawar* v. *Fawar,* 4 N. H., 193; *Jackson* v. *Chase,* 2 John., 87; *Duncan* v. *Wickliffe,* 4 Scam., 453; *Morgan* v. *Clane et al.,* 4 Yerg., 375; *Mallory* v. *Stodder,* 6 Ala., 801; *King* v. *Crocheson,* 14 Id., 822; *Jones et al.* v. *Neal et al.,* 2 Patten & Heath, 339; *Tibeau* v. *Tibeau,* 4 Mo., 78; *Parker* v. *Cane et al.,* 4 Wis., 1.

*Semple and Kinley* for the appellee, contended that the land described in the destroyed deed was not the property

of the grantee named therein after the cancellation, citing 1 Greenl. Ev., § 265, note 3, and the authorities there cited; *Bell* v. *Evans et al.*, 10 Iowa, 353; *Norton, Jewett & Busby* v. *Williams*, 9 Id., 528.

WRIGHT, J.—A judgment was obtained before a justice of the peace in Henry county, against the defendant Hanks, on the 7th of January, 1856. A transcript thereof, certified by the justice, was filed in the office of the Clerk of the Lee District Court, July 26, 1859, and a memorandum thereof duly entered on the judgment docket. An execution issued from the Henry District Court, directed to the Sheriff of Lee county (supposed to be based upon a transcript of the same judgment filed in that court, but of this there is no record evidence before us), which was levied upon the land in controversy on the 19th of December, 1859; *Held,* that the filing of the justice's transcript in Lee county created no lien upon the land, and that no lien was created until the date of the levy.

*Held,* also, that before the lien of a justice's judgment attaches upon lands lying in another county than that where it is rendered, such judgment must first be entered upon the records of the District Court and certified as a judgment of that court for entry in the other county, and not be certified in the first instance to the county where the land lies, by the justice rendering the same. Code, §§ 2320–21, 2485–89.

Complainant bought the land in controversy under an execution against Hanks, levied on the 19th of December, 1859. It seems that Hanks contracted for the same of his co-respondent Shelden, taking a bond for a deed, time being of the essence of the contract. He paid a part of the purchase money, and Shelden made him a deed; the balance of the purchase money remaining unpaid. Hanks wished to surrender his deed and contract. Such negotiations took

place, that Shelden, in good faith, paid him back in property the purchase money received. Hanks surrendered the deed, and, as was supposed and understood, all claim and interest in the land. This was prior to the levy by the sheriff. The deed to Hanks had never been filed for record. Upon these facts complainant claims that the levy, sale, purchase and sheriff's deed invested him with the title, for the reason that the title of Hanks, once vested by the deed, could not be divested by its surrender and destruction, nor otherwise than by a reconveyance.

The general rule seems to be well settled, that the canceling of a deed does not revest property which has once passed under it, by transmutation of possession. The *evidence* of the title is destroyed, but the title itself remains undisturbed. But can this rule be extended so far as to entitle complainant to relief in equity against respondent Shelden, who in good faith paid back to Hanks the consideration money already received, and procured the surrender, in like good faith, of this evidence of title? It is a question of equities, and though the deed may have performed its office as an instrument of conveyance to pass the title to Hanks, which can only pass from him by some mode of conveyance, recognized by law, does it therefore follow that his creditor can in equity hold the property, under a levy made and a lien acquired subsequent to the destruction or cancellation? For the reasons following we conclude that he cannot, and that the bill was properly dismissed in the court below.

The lien of a judgment or a levy attaches not to the naked title, but to the interest of the debtor in the land. There is a clear distinction between the title and an interest in that title. Thus, A gives B a bond for a deed, agreeing to convey the property upon the payment of a fixed amount. This amount being paid, A is still the holder of the legal title, but B owns the interest, and a lien would

attach to B's interest but not to A's. So A makes a mortgage to B to secure a sum of money. The mortgagee does not thereby acquire under our laws such an interest in the land as that a judgment against him would be a lien upon it. The title and interest in that case would both be in A. So again, if A sells a tract of land to B by parol contract, and receives the purchase money, a title arises, and B can in equity compel a conveyance—A in that case being the holder of the title and B the beneficiary, or the party having the interest. In stating these propositions it is of course implied that there has been good faith, no intention to defraud creditors, and nothing done which should estop the parties as against third persons from claiming that the naked title was in one while the beneficial interest was in another.

Applying, then, these rules, we find that while the naked title was not technically divested by the cancellation of the deed; that there was a virtual resale of the premises; that the purchase money was paid; that Hanks held the land after that time as a naked trustee without an interest, and that as Shelden, the beneficiary, could in equity enforce this contract against Hanks and compel its specific performance (Code, §§ 2410, 2411), so his equity is paramount to that of the creditor who claims under Hanks, by virtue of a levy made after this equity arose and was complete.

Affirmed.