## LATHROP v. BROWN.

1. Judgment lien: SALE UNDER JUNIOR JUDGMENT. A judgment lien upon real estate is not affected by a sale of such real estate under a junior judgment.

2. —— INDIVIDUAL PROPERTY OF PARTNER. Whether a judgment against a firm, rendered in a suit in which the individual names of the members were not disclosed, operates as a lien upon the individual property of such members, *quere*.

3. —— OF THE FEDERAL COURTS. Whether a judgment of the United States District Court is a lien upon real estate of the judgment debtor, situated in another county than that wherein the judgment was rendered, or a certified transcript thereof filed and docketed as provided by sections 4105 to 4109 of the Revision of 1860, *quere*.

4. —— PRIORITY OF LEVY. Where neither of two judgments are liens upon the real estate of the judgment defendant, that will have preference, under which a levy is first made upon the property.

5. —— UPON WHAT INTERESTS THE LIEN OPERATES. Under our statutes, judgments of superior courts are liens upon all interests of the judgment debtor in real estate, whether legal or equitable; and it is immaterial, as between the parties, whether such interest appears of record or not.

6. —— APPLICATION OF THE RULE: PARTNERSHIP AND INDIVIDUAL PROPERTY. It was accordingly *held*, that a judgment rendered against a partnership in its firm name operated as a lien upon the equitable interests that the firm had in certain real estate purchased by it, and, for its benefit, attempted to be conveyed to one of its members by a conveyance which, by reason of a mistake in the description, conveyed a different tract from that intended; and that such lien had preference over any interest that a purchaser acquired in such real estate by virtue of a levy upon and sheriff's sale to him of the same as the individual property of the member to whom such conveyance was made, under a junior judgment rendered against the individual members of said firm.

7. —— JUDGMENT AGAINST A FIRM: SALE OF FIRM PROPERTY STANDING IN THE NAME OF A MEMBER. Where a judgment is rendered against a partnership, an execution issued thereon against it in its firm name, does not authorize the levy upon, nor does a sale thereunder pass the legal title to, real estate standing in the individual name of a member to whom the same has been conveyed for the

benefit of the firm. And where such a sale was made, the court directed the same to be set aside, the credit made thereby to be canceled, and the creditor permitted to have a new execution issued on his judgment, and thereunder to sell said real estate as the property of the firm.

*Appeal from Black Hawk District Court.*

### WEDNESDAY, JULY 31.

THIS action was originally brought against appellant, Brown, and his co-defendant Webster, for the recovery of real property — a lot and appurtenances in Cedar Falls.

The answer of defendant Brown set up an equitable defense, Webster's answer did not. The plaintiff then amended his petition, and set forth a cause of action in equity, and asked a transfer to the equity docket. The cause was transferred accordingly. The defendant Brown then filed an amended answer, in equity. The cause was tried to the court upon the following agreed statement of facts:

It is hereby agreed by and between the parties to this suit, that the following are the facts in this case, and that the same may be read and considered as evidence on the trial of this cause by either party, to wit:

That, on or about the 29th day of September, 1855, one James W. McGart, being the owner of the real estate described in plaintiff's petition, sold and intended to convey to one S. H. Packard said real estate. That, in making the deed of said lot, a mistake was made in describing the same, and other and different property than that sold and intended to be conveyed to said Packard was described in said deed. That, afterward, to wit., on or about the 28th day of January, A. D. 1858, the said S. H. Packard sold to Green & Co. the property described in plaintiff's petition, and intended to convey to one

William Green, for the benefit of Green & Co., said property, but made a mistake in the deed, by describing the same property described in the deed from McGart to S. H. Packard, and not the property intended to be conveyed. That the purchase-money paid to said Packard for said lot was the money of Green & Co., and that the deed was made to William Green, one of said firm of Green & Co., for the benefit and convenience of said firm. That, on the 26th day of September, A. D. 1859, Christian Daily recovered a judgment in the District Court of Black Hawk county for the sum of three hundred and sixty-six dollars and seventy-two cents ($366.72) debt, and the sum of twenty-three dollars and ten cents ($23.10) costs, against Green & Co., in their firm name and style without setting out the individual names of said firm. Service of notice in said cause having been made by reading and delivering a copy of said notice to John H. Brown, agent of said firm of Green & Co., and said defendants, Green & Co., appeared and filed their answer in said cause.

That, at the time said notice was served and judgment rendered, William Green was one of the firm of said Green & Co. That, on the 18th day of May, A. D. 1860, an execution was issued upon said judgment, and delivered to the sheriff of said county of Black Hawk, and the said sheriff, on the 7th day of June, A. D. 1860, by virtue of said execution, levied upon the real estate described in plaintiff's petition as the property of William Green, one of the firm of said Green & Co., and, after having advertised the same, as required by law, on the 13th day of July, A. D. 1860, sold the same at public auction to M. W. Chapman, and issued a certificate of sale to the said Chapman, which certificate of sale was, by said Chapman, sold and assigned to the plaintiff, and by the plaintiff Daily to defendant A. F. Brown, and, by the direction and at the request of defendant A. F. Brown, a sheriff's

deed for said premises was executed to Solomon Webster, which deed was filed for record in the office of the recorder of Black Hawk county, on the first day of August, 1861, and recorded.

That on the 19th day of October, A. D. 1859, Richard D. Lathrop, Charles H. Ludington, John H. Morrison, William Faxton and Robert J. Hunter, recovered a judgment in the District Court of the United States, for the northern division of the district of Iowa, held at the city of Dubuque, in the State of Iowa, against George Green and the said William Green, James C. Traer, John W. Traer and William H. McClure, for the sum of five hundred and sixty-one dollars and twenty-four cents ($561.24) and costs, original notices in said cause having been duly served upon each of said defendants. That on the 28th day of February, A. D. 1860, an execution was issued upon said judgment and placed in the hands of the U. S. marshal for said district, and that the said marshal, by virtue of said execution, on the 17th day of March, A. D. 1860, levied upon the real estate in the plaintiff's petition described, as the property of the defendant William Green, and after having advertised the same according to law, on the first day of May, A. D. 1860, sold said premises to the plaintiff in this suit, Richard D. Lathrop, for the sum of two hundred and twenty-five dollars ($225), and on the 18th day of May, A. D. 1861, executed and delivered to the said Richard D. Lathrop, a deed therefor, which deed was, on the 24th day of May, A. D. 1861, filed for record in the office of the recorder of said county of Black Hawk, and duly recorded. That said Richard D. Lathrop, at the time he purchased said premises, to wit, on the first day of May, A. D. 1860, had no knowledge of the fact that said real estate so purchased was bought with the money of said Green & Co., and was held by said William Green for the benefit and conve-

nience of said firm of Green & Co. That on the 31st day of July, A. D. 1863, the defendant Solomon Webster, having discovered the mistake in the description contained in the deeds from J. H. McGart to S. W. Packard, and from Packard to William Green, obtained a conveyance by quitclaim deed, from said J. W. McGart to him, said Solomon Webster, of the premises described in plaintiff's petition, without paying the said J. W. McGart any consideration therefor, for the purpose of correcting said mistake and of perfecting the title to said premises. That the said defendants have had possession of and enjoyed the rents and profits of said premises, ever since the said 18th day of May, A. D. 1861, and have refused to deliver to the plaintiff possession thereof; that the rents of said premises during said time were and are worth the sum of         dollars per year, amounting to the sum of         dollars, and that the said defendants have put improvements upon said premises during said time of the value of        dollars.

The bill of exceptions shows that the foregoing was all the evidence introduced on the trial, and recites that "on trial of said cause the court decided that the equitable interest of the firm of Green & Co., in the premises, standing in the name of Wm. Green, was not levied upon or sold under the execution against the firm. The sale was only of William Green's property therein, and that as the property of William Green, the judgment against the firm collectively was not a lien thereon, and as the property of Wm. Green, the sale of the same to Lathrop had the precedence and conveyed the title." To which ruling and decision, the defendant A. F. Brown excepted.

The record entry, page 31, is as follows: "It is adjudged and decreed that the equitable defense set up by the defendant herein be dismissed with costs against

Lathrop v. Brown.

the defendant;" to which the defendant excepted, filed his bill of exceptions, and appealed to this court.

*A. F. Brown pro se*, and *B. W. Poor* for the appellant.

*Wilson & Doud, Bagg & Allen* and *W. G. Hammond* for the appellee, made, among other, the following points:

1. It is not material whether any transcript of said judgment in the U. S. District Court, against Wm. Green *et al.*, was filed in the county where the property was situated or not, inasmuch as the lien of the judgment was co-extensive with the jurisdiction of said court which included said county. *Massingell* v. *Downs*, 7 Howard, 76; *Shew & Winters* v. *Jones*, 2 McLean, 78; *Sellers* v. *Corwin*, 5 Ohio, 399. And see late opinion of Judge MILLER, U. S. Court Wis.

2. Said judgment, being rendered against William Green and the other members of said firm, as individuals, was a lien upon said property. *Hamsmith* v. *Espy*, 13 Iowa, 439; *Senally* v. *Ellis*, Id. 544.

3. The plaintiff, Lathrop, sustains the relation of a *bona fide* purchaser, and takes all the title and interest which William Green ever could have conveyed to any other *bona fide* purchaser for value. *Evans* v. *McGlasson*, 18 Iowa, 150; *Blodgett et al.* v. *Hobart et al.*, 18 Vermont.

COLE, J. — It will be seen from the agreed statement of facts, that the judgment of Daily, under which the defendant Brown claims, was first rendered; but the first sale was under plaintiff's judgment. If both judgments were alike liens upon the real estate in controversy, the defendant's title would, in such case (if the judgment defendant William Green was the owner and holder of the legal title) be the best.

1. JUDGMENT LIEN: sale under junior judgment.

But Daily's judgment was against the firm of Green & Co., of which firm William Green was a member. The suit of Daily was against the firm of Green & Co., and did not disclose the individual names of the members of the firm. Whether the judgment in such case was a lien upon the individual property of the members of the firm, has never been directly decided by this court. *Sed vide Lewis et al.* v. *Conrad et al.*, 11 Iowa, 153; *Davis & Co.* v. *Buchanan & Bone*, 12 Id. 575; and *Hamsmith* v. *Espy*, 13 Id. 439. In the last cited case, it was said, if a partnership is sued in its firm name a *scire facias* is necessary in order to reach individual property.

*2. —— individual property of partner.*

The judgment of Daily was recovered while the Code of 1851 was in force.

That Code provided, " Sec. 1690. Partners may sue or be sued either in their partnership name or by setting forth their individual names, at the option of plaintiff." "Sec. 1691. If suing or sued in their partnership name, their individual property may be made liable to any judgment against them unless sufficient cause be shown to the contrary." In lieu of these two sections, our Revision has provided, " Sec. 2785. A copartnership may sue or be sued in its firm name, and when so sued the individual property of any member of such firm may, on *scire facias*, be made liable to the judgment, unless he show cause to the contrary. A copartnership may also sue or be sued in the individual names of its members."

The commissioners of the revision, in their report to the legislature, make the following remarks in relation to the section last quoted : "We recognize in a copartnership, a party other than and different from any of or all its members, having a purse of its own, and that a creditor of it has a right to sue *it*, and get a judgment against *it* and levy on its goods."

Lathrop v. Brown.

The provisions of the Code of 1851 are not materially different from the Revision of 1860, except that the latter provides the mode, on *scire facias*, whereby the individual property may be made liable. This statutory mode, however, would probably not be held to be exclusive, or the only mode in which the individual property may be reached.

In view of these statutory provisions, it may be true, as the District Court decided, that " the judgment against the firm collectively, was not a lien on the individual property of William Green." We say it *may* be correct, because we do not deem it necessary to definitely and conclusively determine that question, in order to decide this case.

The same is true as to the question whether the judgment of Lathrop *et al.* against the individual members 3. —— of the of the firm of Green & Co., rendered in the federal courts. United States District Court for the northern district of Iowa, in the county of Dubuque, was a lien upon the real estate of the defendant therein, William Green, situated in the county of Black Hawk. Judgments at the common law, aside from any statute, were not liens upon the real estate of the judgment defendants. *Lamb* v. *Shays*, 14 Iowa, 567; *Welton* v. *Tizzard*, 15 Iowa, 495 (top of page 499). The lien of a judgment is, therefore, dependent upon statute, and extends so far, and so far only, as the statute declares. We have not been directed or cited to any United States statute making judgments of the federal courts liens upon the real estate of the judgment debtors. In the absence of any such statute (conceding the power to enact one), our own State statute would control the right to and extent of the judgment liens in this State. Our statute provides (Rev. § 4105 [2485] to 4109 [2489]), that judgments of the Supreme and District Courts of this State, and of the

District and Circuit Courts of the United States, shall be liens upon the real estate of the defendants in the county wherein, and from the date the judgment was rendered; that attested copies may be filed and docketed in other counties, and become liens from the date of docketing and indexing; all which liens continue for ten years from date of judgment. These considerations would lead us to say that it may be true that a judgment of the United States District Court is not a lien upon the real estate of the judgment debtor, situated in another county than that wherein the judgment was rendered or copy filed and docketed as above specified. We say it *may* be true, because we do not deem it necessary to directly adjudicate this question in order to determine this case.

If it be true that neither the judgment of Daily or of Lathrop *et al.* was a lien on the property of William

4. —— priority of lien.

Green, situated in the county of Black Hawk, it would follow that, if Lathrop *et al. first seized* the property of William Green by actual levy of execution, the first lien would attach in their favor. This would certainly be so, if we apply the same rule to real estate which we apply to personal property not subject to judgment lien; for, in this State, as to personal property, the lien does not attach until actual levy. *Reeves & Co.* v. *Sebern*, 16 Iowa, 234.

We are now brought to the application of the questions of liens as they relate to the particular facts of this case. Two of these facts are so material that they control the rights of the parties to this litigation: First, William Green *never held any legal title* to the property in controversy. By mistake, the deed to him conveyed other lands, and not the lands in controversy. Second, the firm of Green & Co. *were the equitable owners* of the property at the time of the rendition of Daily's and plaintiff's judgments, and at the time of both levies and sales.

Under our statutes, judgments are liens upon all interests in real estate, legal or equitable. *Cook & Sargent* v. *Dillon et al.*, 9 Iowa, 407; *Crosby* v. *Elkader Lodge*, 16 Id. 399; *Blaney* v. *Hanks*, 14 Id. 400. And it is wholly immaterial, as between the parties, whether the interest of the judgment debtor appears of record or not. *Denegre* v. *Hann et al.*, 13 ,Iowa, 240.

*5. —— upon what interests the lien operates.*

This being so, the judgment of Daily against Green & Co. was a lien upon their interest in the real estate in controversy. That interest was the actual ownership of the property; it was purchased by them and for them, and their means paid for it, but the mere naked legal title was still in the former owner, McGart.

*6. —— application of the rule: partnership and individual property.*

At the time Green & Co. acquired the right to the property, it was intended to convey the naked legal title to William Green, for the benefit of the firm; but, by mistake, this was not done, and it remained in McGart. So that William Green never held the legal title, nor did he, as an individual, ever have any equitable interest in it; whatever claim or interest he had was as a member of the firm of Green & Co.

The judgment of Daily was against Green & Co., as a firm, and was a lien upon their interest in the property in controversy, from the date of the judgment. The Daily judgment was rendered before the judgment of Lathrop *et al.*, under which the plaintiff claims, and the lien of the former, upon the real estate of Green & Co., was paramount to the latter, although the latter was rendered against the individual members of the firm. Nor was this paramount lien of the judgment at all affected by the sale under the Lathrop judgment having been first made. Standing upon their rights as judgment creditors of the firm of Green & Co., Daily is first and best. The exe-

*7. JUDGMENT: against a firm: property standing in member's name.*

cution issued upon the Daily judgment was levied upon the property in controversy "as the property of William Green," and was sold as such; the defendant Brown succeeding to the rights of the purchaser, by assignment to him of the certificate of sale, under which the deed, by Brown's direction, was made to Webster, in trust for Brown. This certificate and deed could not operate to pass the legal title to the purchaser and grantee, even if William Green had been the holder of the title. And this for two reasons: First, the execution was not against William Green, and gave no authority to the officer to levy upon his property; and the seizure and sale of it as his property, being without authority, was simply void; and, second, the property was not levied upon or sold as the property of Green & Co.; and hence their rights did not pass by the sale and deed. While it would have been competent for the officer to have seized and sold the property, under the execution, as the property of Green & Co., or to have seized and sold it by virtue of the execution, without specification, in the levy, as to whose property, and thereby to have passed the title of Green & Co., yet he did not do so, and the purchaser claiming under the levy, sale and deed, can take no more than by their terms they purport to convey.

The purchaser at the marshal's sale under their judgment and execution in favor of Lathrop *et al.* against William Green and others, members of the firm of Green & Co., acquired the title or right of William Green in and to the land, subject to any prior lien thereon. But we have seen, as set forth in the agreed statement of facts, that William Green was not the holder of the legal title, and, therefore, that did not pass to the purchaser; nor was he, as an individual, possessed of any equitable right to the property, and, therefore, none such passed to the purchaser. If it be said that he had an equity therein

as a member of the firm of Green & Co., which might be levied on and sold under an execution against him individually; it may be replied thereto that such equity was subject to the lien of the prior judgment in favor of Daily against the firm; and, therefore, that whatever interest was thus acquired by the purchaser, was subject to such prior lien.

Now, it is this purchaser under the Lathrop *et al.* judgment, himself a plaintiff in the execution, who brings this suit in equity to perfect and quiet his title under his execution sale and deed. Upon what does his claim rest? Let us see. First, the judgment under which he claims is junior to that under which the defendant claims. Second, the judgment debtor under whom he claims title never had any title, either legal or equitable. Third, his judgment was probably never a lien upon the property in controversy, and his only right or claim thereto grows out of his execution, levy and sale. His whole claim, therefore, rests upon this: That but for a mistake of fact, his judgment and execution, defendant would have been the holder of a bare or naked legal title. Without stopping to discuss what would have been the rights of the plaintiff if William Green had been the holder of the legal title, at the date of the judgments, execution sales and deeds, we simply determine that in this case, the plaintiff did not acquire by his purchase such an equity in the property, as against defendant, as will justify a court of chancery in setting aside the prior lien and older equity of the defendant, in order to perfect plaintiff's title. *Blaney* v. *Hanks*, 14 Iowa, 400; *Bartle* v. *Wallace et al.*, 21 Id. 346; *Vannice* v. *Bergen*, 16 Id. 555; *Evans* v. *McGlasson*, 18 Id. 150; *Butterfield* v. *Walsh*, 21 Id.

By the agreed statement of facts, it appears that the defendant Brown was the owner of the certificate of sale

under the Daily judgment, and that by his direction the deed was made to defendant Webster. This agreed statement is signed by Webster, as well as by Brown and Lathrop. Webster, therefore, holds the title or equity, whatever it may be, acquired by that sale and deed, in trust for Brown; and the subsequent deed by McGart to Webster, made as is stated "for the purpose of correcting said mistake, and of perfecting the title to said premises," would inure to the benefit of Brown; it being held by Webster in trust for him. But the fact that the legal title is thus held for Brown, ought not, under the circumstances of this case, to operate so as to defeat the equities of the plaintiff, whatever they may be.

In view of all the facts in the case, it appears to us that substantial justice will be subserved by reversing the judgment of the District Court and remanding the cause, with directions to set aside the sale under the Daily judgment and cancel the credit made thereby, to permit the defendant Brown to have a new execution indorsed for his benefit, issued on the judgment, and thereunder to sell the real estate in controversy as the property of Green & Co., unless the plaintiff elects to redeem from the lien of the Daily judgment, in which latter case the defendant Webster will convey by special warranty against incumbrances, etc., by himself, to the plaintiff, and his title will be quieted.

In case the property is sold under execution, Webster will make a like conveyance to the sheriff's grantee. The costs of the District Court will be equally divided between Lathrop and Brown. The appellee will pay the costs of this court.

Reversed.