## Thomas v. Kennedy *et ux.*

1. **Notice: BY POSSESSION.** Where real estate is ostensibly as much in the possession of the husband as the wife, there is no such actual possession by the wife as will impart notice of an equitable interest possessed by her in the land, to a purchaser at execution sale under a judgment against the husband in whom the legal title apparently was at the time of the rendition of the judgment.

2. **Conveyance: MISTAKE: GRANTOR MAY CORRECT.** Where a court of equity would compel a grantor to correct a mistake in the description of land intended to be conveyed, he may voluntarily do what equity would thus enforce.

3. **Parties: EQUITABLE DEFENSE: CONVEYANCE: MISTAKE IN DESCRIPTION.** K. sold and undertook to convey to D. certain real estate, but by mistake the land was misdescribed. D. afterward executed a voluntary conveyance of the land to his daughter, the wife of said K., making the same mistake in the description. D. after this died. Subsequent to this S. filed, in the county where the land lay, a transcript of a judgment against K., in whom the naked legal title, by reason of said mistake, still remained, and soon thereafter had the land sold under said judgment, and the sheriff made a deed to the purchaser therefor. Subsequent to this judgment, though prior to

Thomas v. Kennedy.

said sale thereunder, K. executed a deed to his wife, reciting therein that it was made to correct the mistake in the deed from him to D., and in the deed of the latter to K.'s wife. In an action to quiet the title to said land by the purchaser at execution sale against K. and wife, she set up the above facts concerning her title as an equitable defense and asked the title to be confirmed in her against the plaintiff. It was argued that the voluntary conveyance from D. to K.'s wife amounted, on account of the mistake, only to a contract to convey; that the proceeding on her part was in effect to enforce a specific performance of such contract against D., and that, therefore, his heirs should have been brought in as parties. *Held*, otherwise, and that in this proceeding, the heirs of D. were not necessary parties. *Held*, further, that under the facts, K.'s wife was entitled to have the title quieted in her.

4. Judgment lien: TO WHAT IT ATTACHES. The lien of a judgment attaches not to the naked legal title, but to the judgment debtor's interest in the land. If he has no interest, though possessing the naked legal title, then no lien attaches.

5. Notice: JUDICIAL SALE: RECORD OF INSTRUMENT: WHAT IT IMPARTS. A purchaser at an execution sale is bound to take notice of the condition of the record title up to the time of the sale; and if an instrument be then properly indexed, he is charged with constructive notice of all it contains.

*Appeal from Clinton District Court.*

THURSDAY, MAY 7, 1868.

PLAINTIFF's petition (at law) claims as against the defendants the title to and possession of the *south-west* quarter of the north-west quarter, section 12, township 81, range 2, in Clinton county. The basis of his title is this: The land was entered by the defendant W. W. Kennedy, and the title without controversy was in him until in February, 1856. On the 16th of June, 1861, a transcript of a judgment in favor of E. D. Selden, and against said Kennedy, recovered in Scott county, was filed in the office of the clerk of the Clinton District Court — upon this an execution issued, which, on the 16th of July, 1861, was levied upon the land in controversy. August

23, 1861, the land was sold, under the execution, to E. M. Selden, to whom the sheriff made a deed in August, 1862, and under whom plaintiff claims by deed of October, 1865.

Defendants admit, that the title was once in the husband, Kennedy, but set up the following facts to defeat plaintiff's recovery: February 23, 1856, Kennedy sold this land to his father-in-law, Everett Drake, for the consideration of two hundred dollars, and on that day the husband and wife made to Drake a deed, which by mistake described the property as the *south-east* quarter of the north-west quarter, etc., which deed was duly recorded.

On the 5th of February, 1858, Drake and wife, "in consideration of natural love and affection and the further sum of five dollars," conveyed the premises to their daughter, Angeline, wife of W. W. Kennedy, and co-defendant herein. This deed contained the same mistake of description. Drake died in 1860, leaving three children.

July 27th, 1861, W. W. Kennedy, for (according to the language of the deed) the consideration of two hundred dollars, conveyed this land by a correct description to his co-defendant — the said deed after describing the land, containing this recital: "And this deed is made to correct a deed made by the first party to Everett Drake, dated February 23, 1856, and recorded in Book J of deeds, pp. 110 and 111, of the Clinton county records. And to correct a deed from the said Everett Drake to the said second party herein, dated February 5, 1858, and recorded in Book Q of deeds, pp. 408 and 409, of said Clinton county records." This instrument was on the same day (the record says the 26th of July, but this is an evident mistake, as the deed was made the 27th) indexed — being described as a deed — giving the land correctly, as also

the names of the grantor and grantee, and was in due time properly recorded.

In June, 1861, Kennedy and wife commenced improving the land — breaking and fencing it — said improvements being in progress at the time it was sold at sheriff's sale.

The answer of Angeline Kennedy sets up all these facts, and asks that her " title may be quieted and confirmed in her as against said plaintiffs, and that she may have judgment for costs." To this there was a replication, which, in conclusion, asked that plaintiff's title be quieted, etc.

It was agreed that the equitable defense should first be tried, which being submitted, the court below found for defendant, and ordered that the title of the said Angeline should be quieted as against plaintiff. Plaintiff appeals.

*D. B. Nash* and *Thompson & Campbell* for the appellants.

*Cook & Drury* for the appellee.

WRIGHT, J. — The case may be divested of many of the difficulties, suggested by appellants' counsel, by recurring to some facts, to our minds well established by the evidence.

These defendants, nor either of them, ever owned or pretended to own, the *south-east* quarter of the northwest quarter of section 12, township 81, range 2. Nor was it ever owned by Everett Drake. The land sold by Kennedy to Drake and intended to be conveyed, was the south-*west* quarter, etc., and this same land Drake intended to convey to his daughter.

The mistake was an innocent one, there being no intention to mislead or defraud any one. The deed from the husband to the wife was made for the purpose of correct-

Thomas v. Kennedy.

ing these mistakes. Kennedy received a valuable consideration from Drake, for the conveyance of February 23, 1856, to wit, property of about the value named in the deed. The recital in the deed to the wife, of July 27, 1861, refers correctly and with entire accuracy to the dates of the prior deeds, and the books and pages where each were recorded. The deed from Drake to his daughter was founded upon the consideration of " natural love and affection" alone. He lived in this State at the time Kennedy conveyed to him — during the same year removed to Virginia, and that fall, having determined not to return, he expressed his intention to give this land to his daughter, and accordingly in 1858, made the deed. The mistake was not discovered until in 1861, about the time the husband conveyed to the wife. When the debt was contracted, upon which the judgment was recovered, under which plaintiff claims, does not appear.

The question of when possession was taken, what improvements were made, and the effect of the same 1. NOTICE: by upon plaintiff or the purchaser, at the sher-
possession. iff's sale, is, in our opinion, of but little if any importance. If this was a contest between the defendant Angeline and the heirs of Drake — in which she sought a correction, as against them, of the deed of February 5, 1858 — it might become material to inquire whether she took possession under, and pursuant to, the agreement to convey, which equity might imply from the deed containing the wrong description, as also whether the improvements made would not give her this right, though the deed was founded alone upon a good, as distinguished from a valuable, consideration. But for the present, we shall assume that these questions are out of the case. The only effect of the claimed possession being that of notice of ownership or claim of right to the purchaser at the sheriff's sale, we remark that we

give it no weight, for the reason that the possession was ostensibly as much in the husband as the wife, and she, therefore, is entitled to nothing on that ground. And here let us be understood. There was no building upon the land. A month or more before the sheriff's sale, hands were put to work fencing and breaking it, under the direction of both husband and wife, he acting, as he says, for the wife. He, however, was upon the ground, assisting and directing, apparently for himself, no one knowing by any public declaration or act, or otherwise, that the work was being carried on for the wife, nor that the possession then taken was for her. And we are not prepared to hold, that, under such circumstances, third persons would be affected with notice of the wife's possession. In other words, they could as well, and indeed more reasonably presume, that the possession was that of the husband as of the wife, and it would be carrying the doctrine of notice to an unusual extent to hold, that the world was, without more, bound to know that he was in possession and making improvements for her. It would be very different if it was claimed, that she was to be prejudiced and her rights affected by his apparent acts of ownership, while employed for her and engaged by her direction in expending her means in improving the land. As the case now stands, we inquire alone, as above suggested, whether his possession was so clearly and notoriously hers, as that the party under whom plaintiff claims was bound to take notice of it. We conclude not, and if defendant (the wife) has no better ground upon which to stand, her title must fail.

It is a mistake to regard this as a proceeding, on the part of the defendant Angeline, to enforce a specific performance of a contract to convey on the part of the father. And, therefore, what would be her rights, as against the other heirs, and

2. CONVEY-
ANCE:
mistake:
grantor may
correct,

if they were here contesting her right to such relief, treating her as a mere volunteer, and how far her claim would be within the disabling effect of the statute of frauds, are questions entirely foreign to the present inquiry. She stands as against this plaintiff strictly on the defensive.

She asks to be relieved in her answer as against *him* on his pretended title, and this is the extent of the judgment in her favor. As equity would have compelled the husband to correct this mistake, it was perfectly competent for him to do voluntarily that which she could have enforced. She is not a mere volunteer asking a court of equity to enforce a voluntary gift from the father to her against the other children. Nor is she claiming under a parol gift. She is claiming under a deed — a deed, too, from the very party under whom plaintiff claims. What effect this deed had is another question to be hereafter considered. Plaintiff is not claiming under a deed from the other heirs, nor under one from the ancestor. The very basis of his claim — and this destroyed, he has no title — is, that the defendant in execution, W. W. Kennedy, never parted with the title to this land, and that Drake never owned, and hence, of course, that his heirs never did. His claim is adverse to any possible right of these heirs in the land. The defendant, Angeline, is not, by a bill in equity, seeking a discovery and relief, as against a conveyance made by Drake or the other heirs, to plaintiff or the party under whom he claims. If she was, the case would be analogous to *Findly* v. *Hinde* (1 Pet. 241); *Simms* v. *Guthrie* (9 Cranch. 25); *Mallow* v. *Hinde* (12 Wheaton, 193), relied upon by appellant. Nor is she, as already stated, asking to *enforce* a voluntary contract — one founded upon a merely good or meritorious consideration, and hence, too, the doctrine found in 2 Story's Eq. Jur. (793*a*) and which we do not, by any

means, controvert, is entirely inapplicable. And the same is true of *Firnan* v. *Firnan* (13 Ind. 317), the correctness of which is not denied. That was a contest between heirs — one of them claiming under a voluntary deed, which he asked to have reformed. Here defendant no longer stands upon a voluntary deed founded upon a good consideration, but claims under a deed which vests her with the absolute legal title, subject, as against plaintiff, to the lien of the judgment under which he claims. And thus we might, by a reference to all the authorities cited by appellants, show how entirely they are inapplicable to the case before us. The foregoing, however, must suffice.

We have not thus far, in words, held that the heirs of Everett Drake were not necessary parties — a point upon which appellants' counsel rely with much confidence to reverse this case. And yet the preceding views, in effect, dispose of it. In giving it, however, some further attention, let us briefly glance at the situation of the parties to the record and controversy.

*3. PARTIES: equitable defense: conveyance: mistake in description.*

Plaintiff brought his action at law. The defendant set up an equitable as well as a legal defense — and this she had a right to do. If the deed from W. W. Kennedy to her had been made prior to June 16, 1861 (the day the transcript of judgment was filed in Clinton county), she could have stood successfully upon her simple legal title. The conveyance to Drake and from Drake to her, would, so far as concerned the naked title at law, have been of no consequence. If plaintiff relied upon fraud, in that state of case, he would have been driven to an equitable forum. But, made as this deed was, after the lien of the judgment attached — plaintiffs' title taking effect by relation to the date of this lien — defendant deemed it safer and better (as it was) by an answer setting up an equitable defense, to present the grounds why plaintiffs'

title should not and could not, thus date from the filing of the judgment. And that it would not, we may remark, in passing, is plain from the consideration, that the **1. JUDGMENT LIEN: to what it attaches.** lien of the judgment attaches, not to the naked legal title, but to the judgment debtor's interest in the land. *Blaney* v. *Hanks*, 14 Iowa, 400; *Bell* v. *Evans*, 10 id. 354; *Norton et al.* v. *Williams*, 9 id. 528; *Seevers* v. *Delashmutt*, 11 id. 174; *Fords* v. *Vance*, 17 id. 94. Now, in thus setting up her equitable defense, was it necessary that she should make the heirs of Everett Drake parties to the action? And if so, upon what ground?

Without recurring further to the fact, that defendant does not, by an original bill, seek discovery and relief— a fact which we now leave entirely out of view—we remark that appellants' claim of want of parties, is based upon the idea, and indeed, beside this, has nothing upon which to stand; that plaintiff holds under Drake, and not under Kennedy, and that defendant (Angeline) holds adversely to such supposed claim. Than this, however, there could be no greater mistake. Both parties take from Kennedy—the one by judgment title, the other by the deed, which she claims in equity is prior in point of time to the lien of such judgment. Now, if Kennedy had made a deed, properly describing the land, to Drake, and the latter had conveyed to the wife by a wrong description, and if after this Drake had, by a good description, conveyed the land to plaintiff, in a contest as to their respective equities, these heirs might have been necessary, certainly would be proper parties. For then they would be interested at least to the extent of the covenants contained in the deed of their ancestor. But that is not this case, by any means. For how, by possibility, could these heirs be affected by this litigation, or what interest have they in it? It is a contest as to whether plaint-

iffs' apparent title should prevail over defendant's equity. The judgment settles nothing as against these heirs. It in no manner concludes them. The deed from Kennedy to his wife can have no such effect. Their rights are just as indisputable, just as complete, as though that deed had never been made, as though this judgment had never been entered. The adding to the judgment, that the defendant's title should be quieted as against plaintiff, does not make the case different. It has no other or further effect than the language implies. This would have been the legitimate effect of a simple judgment in her favor until set aside. Indeed it seems to us that these heirs were no more necessary parties than if the case had been heard alone upon a legal defense. They are not even consequentially interested or affected by this litigation. And without extending the argument, see upon this subject the following authorities, which place the matter beyond all doubt: Mitf. Eq. Pl. 170; Story's Eq. Pl. §§ 228, 226a; Glyn v. Soares, 3 Mylne & Keen, 450.

We have only, then, to inquire, finally, what was the effect of the deed of July, 1861, from Kennedy to his wife? It will be remembered, that it was made and recorded after the lien of the judgment attached, as also after the levy, but before the sale. If it had been made before the lien attached, though filed for record after and before the sale, there can be no doubt, under our former decisions (and particularly *Norton et. al.* v. *Williams* [9 Iowa, 528], and see other cases before cited, as also *Welton* v. *Tizzard* [15 id. 495]), that it would give defendant the better title. It was made, however, and, of course, recorded, after the judgment lien attached. If before the sale, the grantee therein, the present defendant Angeline, had filed her bill setting up these facts, and had established them, there can be no doubt, under the authority

of *Welton* v. *Tizzard* (*supra*), that she would have suc-
ceeded in removing the cloud. In that case, however,
there was nothing of record to affect the judgment cred-
itor, with notice of the mistake in the deed, nor of the
grantee's or mortgagee's equity, and hence the necessity
of proceeding before sale. Here, according to defend-
ant's theory, there was notice, and, as plaintiff, or the
party under whom he claims, took affected thereby, his
title is entirely defeated. And just here is the turning
point in the present inquiry. Was plaintiff, by the index-
ing of this deed — or rather was Selden — bound to take
notice of all that this deed contained, and does the fact
that it was made after the judgment, place him in any
better position than if it had been made before and re-
corded afterward?

In accord with the prior rulings on this subject, we
think the true doctrine is, that the purchaser is bound to
know or take notice of the condition of the
record title, up to the time of the sale. And
if actual notice, on the day and at the time
of sale, would have affected him, the same is
true of instruments filed for record, and which become
by that act constructive notice. If properly indexed, he
is affected with all that it contains. And if thereby put
upon inquiry, he is bound to take notice of all that he
might have learned by pursuing the path thus indicated.
Upon this principle rest numerous decisions of this court,
and of its correctness there can be no doubt. *Barney* v.
*Little*, 15 Iowa, 527; *Bostwick* v. *Powers*, 12 id. 456;
*Calvin* v. *Bowman & Neal*, 10 id. 529; *Scoles* v. *Wilsey*,
11 id. 261.

Applying these rules, Selden was bound to know, and
in legal contemplation did know, when he purchased at
the sheriff's sale, that Angeline Kennedy held the legal
title to this land. Not only so, but he knew the contents

of the deed under which she held, just as though the same information had been given to him orally at and before the purchase. Knowing this, there is no difficulty in determining the extent of information to which the proper inquiry would have led him. This deed advised him, necessarily, fairly and legitimately, that long prior to the filing of the judgment, this land had been sold, and that when the lien attached, though the title was in the debtor, all interest had passed from him and was vested in another. If he had been told at the sale, that the prior deeds were intended to convey this land, and that it was in fact sold, he would have been put upon inquiry, and if this had been subsequently established, the equity would have prevailed. He was told this in effect by this record. And having this notice, he ought not in conscience to take the title discharged of the equity. *Nailor* v. *Fisk*, 5 Cush. 256; *Williamson* v. *Brown*, 15 N. Y. 354.

We remark, in conclusion, that this deed was an instrument, the filing of which for record imparted to these persons notice of its contents, and that it is, therefore, in every respect unlike that referred to in *Brown et al.* v. *Budd* (2 Ind. 442), to which we are referred by counsel. So, too, the case of *Lewis* v. *Baird* (3 McLean, 56), holds that the record was not notice, because under the ordinance of 1787, the recordation of an *equity* is not included, but only conveyances of the legal title. And to the same effect are the other authorities cited to this point.

Their correctness is not controverted. Their applicability, however, is not perceived. Errors overruled, and judgment below

Affirmed.