ELDA LUCILE WARDMAN, Minor, by RUTHANNA WARDMAN, her Guardian, Appellant, v. ROBERT HARPER.

**Conveyances:** REVOCATION : SUBSTITUTION.  The parties to an unrecorded deed may revoke the same and substitute another by parol agreement; and it is immaterial whether the original was destroyed or delivered back to the grantor.  Evidence held to show that by agreement the former deed reserving a life estate was revoked and a new deed executed and delivered in its stead, reserving a fee title to the land under which plaintiff in this action claims title.

*Appeal from Marshall District Court.*—HON. C. B. BRADSHAW, JUDGE.

TUESDAY, JUNE 25, 1912.

The facts are stated in the opinion.—*Reversed.*

*Carney & Carney,* for appellant.

*C. H. Van Law,* for appellee.

SHERWIN, J.—Robert Tannahill and Isabella Harper were brother and sister. In 1888, and for several years prior thereto, Mrs. Harper was her brother's housekeeper on his farm of about 250 acres. In May, 1888, Robert Tannahill conveyed the farm, on which he and his sister, Mrs. Harper, were living, to her, reserving to himself a life estate in the entire land conveyed. The consideration named in this deed was love and affection and $2. The deed was not recorded until after the death of both Tannahill and Mrs. Harper, more than twenty years after it was made. On the 11th day of November, 1889, Robert Tannahill made another deed conveying the same land, with the exception of about five acres thereof, to Mrs. Harper, and this deed was delivered to her and recorded on the day of its execution, the 11th of November, 1889. The land is described in the last deed exactly as it is in the first one, and, deeming the description thereof and the language of the reservation in the last deed material, we here set out that part of the deed. It is as follows:

The south half (½) of the northwest quarter (¼) and the north half (½) of the southwest quarter (¼) and the northwest quarter (¼) of the southeast quarter (¼) and the south half (½) of the southwest quarter of the northeast quarter (¼) and all that part of the northwest quarter of the northwest quarter, south of the highway running through said forty-acre tract, all in section No. thirteen (13) in township No. eighty-four (84), north, range No. nineteen (19), west of the 5th P. M., Iowa, ex-

cepting the following described land which is reserved to the grantor herein, viz.: All that part of the south half of the southwest quarter of the northeast quarter of said section thirteen (13) township and range aforesaid, lying east of the road running through said twenty-acre tract, being about five acres of land, more or less.

The consideration named in the deed of November, 1889, is $10,000. Mrs. Harper took possession of the land conveyed to her, and Robert Tannahill retained possession of the land reserved' in the last deed, and both continued in possession until their deaths; the death of Robert Tannahill occurring in August, 1908, and the death of Mrs. Harper in April following. Tannahill left a will by which he gave the plaintiff what is known in the record as lot No. 2 in the S. W. ¼ of the N. E. ¼ of section 13; it being, as we understand the record, the tract of about five acres that was reserved in the deed of November, 1889. His will was duly probated, and thereafter this suit was brought to determine the title to this five acres; the plaintiff claiming that it belongs to her under the will of Robert Tannahill, and the defendant claiming that the deed of May, 1888, conveyed the same to his mother, Isabella Harper, subject only to the life estate of grantor, and that the purpose and effect of the deed of November, 1889, was only to convey Robert Tannahill's life estate in the rest of the land. There was a judgment for the defendant, and the plaintiff appeals. The controlling question for determination is whether the deed of May, 1888, remained in force after the execution of the deed November, 1889. If it did, Robert Tannahill had only a life estate in the land in controversy here, because the deed of May, 1888, conveyed this land with the remainder of the farm, reserving a life estate only.

That it was competent for the parties to revoke and cancel the first deed by parol agreement, and to substitute another therefor, can hardly be questioned. *Blaney v.*

*Hanks,* 14 Iowa, 400; *Matheson v. Matheson,* 139 Iowa, 511; *Albrecht v. Albrecht,* 121 Iowa, 521; *Grapes v. Grapes,* 106 Iowa, 316; *Brown v. Brown,* 142 Iowa, 125.

1. CONVEYANCES: revocation: substitution.

And if such an agreement and substitution was, in fact, made, it can make no difference whether the original deed was destroyed or delivered back to the grantor. A failure to destroy, or deliver back, would be evidence bearing upon the actual contract and intent of the parties, but nothing more. The first deed was unrecorded, and a reconveyance was therefore not necessary to keep the record title straight.

The evidence fully satisfies us that the deed of November, 1889, was executed by Tannahill and accepted by Mrs. Harper in place of the deed of May, 1888, and that it was their mutual agreement and intent that the prior deed should be of no further force or effect. The second deed made no reference to the first. The exception and reservation were of an absolute fee, and not of a life estate only. The evidence shows that, when the second deed was executed, the scrivener who made it had before him the first deed, and took the description of the entire farm therefrom, and it is apparent that he thought it easier to make the reservation of the five acres in the form he did than to undertake a description of the farm with the five acres excluded therefrom. It is also significant that the fee was reserved in this deed, when the former deed reserved in terms a life estate. If it had been intended to reserve a life estate only in the five acres in the second deed, it would undoubtedly have been so declared. Another circumstance is that the second deed in express language conveys the whole estate in the land, except the five acres reserved, while, if it was the intention of the parties that it should convey only the life estate that had been reserved in the former deed, it would have been a simple matter to have said so in language that could not be

misunderstood.  The declarations of both parties after the execution of the second deed clearly show that they understood that the first deed was no longer of force, and that the tract reserved to Tannahill in the second deed was held by him in fee.  That he so understood the transaction is further evidenced by his act in giving it to plaintiff by his will.  Still another fact worthy of note is that the second deed was duly recorded on the day that it was executed, while the first deed was not recorded until after the death of both grantor and grantee, and was then found and recorded by this defendant.  It is true, the evidence tends to show that the first deed remained in possession of Mrs. Harper until her death; but it is a circumstance of slight value when considered with the other evidence in the case and in connection with the fact that the parties to the transaction were brother and sister.

We reach the conclusion that the plaintiff is entitled to lot 2 under the will of Richard Tannahill, and the judgment of the district court is therefore—*Reversed.*