# Wheeling.

## PACK v. HANSBARGER et al.

### Decided December 11, 1880.

1. H. by a parol contract sells to McN. a tract of land, and McN. upon faith of such contract pays H. the full amount of the purchase-money and is put into possession of said land; and McN. and those claiming under him after so taking possession of the land continue in possession of the same, &c., upon faith of said contract. Some time after all this occurred, but while said McN. was still in possession, P. obtained a judgment against H., his debtor, and caused it to be duly docketed. H. some time after said parol contract had been so executed made a deed to McN. for said land, which was not admitted to record, until after the said judgment was rendered. HELD:

> That while said deed is void as to P.'s said judgment, McN. and those claiming said land under him by parol contract, executed by payment of part of the purchase-money to McN. and by the delivery of possession by said McN. to his said parol vendees of the land and the making of improvements thereon by the last named vendees, have an equitable interest in said land by virtue of said parol contract between H. and McN., executed as aforesaid, prior and superior to the judgment-lien of said P., and that in a suit in equity brought by said P. to enforce the lien of such judgment against said land said equitable interest of McN. and his parol vendees so acquired in said land will be protected against said judgment, and the land will not be sold to pay said judgment of P.

2. A purchaser of land by parol contract, which has been so far executed as to vest in him the right to compel his vendor to execute the parol contract in a court of equity, has an equitable right in said land so purchased, which a court of equity will fully protect against the lien of a subsequent judgment-creditor of his vendor.

1880
Special Term.

Pack
v.
Hansbarger
et al.

| | |
|---|---|
| 17 | 313 |
| 37 | 371 |
| 17 | 313 |
| 39 | 172 |
| 17 | 313 |
| 42 | 512 |
| 17 | 313 |
| 44 | 497 |
| 45 | 665 |
| 17 | 313 |
| 48 | 101 |
| 48 | 274 |
| 48 | 311 |
| 17 | 313 |
| 50 | 388 |
| 17 | 313 |
| e 51 | 145 |
| 17 | 313 |
| e57 | 568 |
| 57 | 569 |

3. Where statute-enactments do not interfere a judgment-creditor can acquire no better right to the estate of the debtor than the debtor himself has when the judgment is recovered. He takes it subject to every liability under which the debtor held it, and subject to all the equities which exist in favor of third parties; and a court of equity will limit the lien of the judgment to the actual interest which the debtor has in the estate.

Appeal from and *supersedeas* to a decree of the circuit court of the county of Monroe, rendered on the 17th day of May, 1878, in a cause in said court then pending, wherein Augustus Pack was plaintiff and A. A. Hansbarger and others were defendants, allowed upon the petition of R. J. Crebbs and H. M. Piles.

Hon. Homer A. Holt, judge of the eighth judicial circuit, rendered the decree appealed from.

HAYMOND, JUDGE, furnishes the following statement of the case:

On the 19th day of March, 1875, the plaintiff brought his suit in equity on the chancery side of the circuit court of the county of Monroe against A. A. Hansbarger, Henry P. Cummins, Mitchel Comer, Anderson Mc-Neer and Woodson Mann. And afterwards at rules he filed his bill in said cause, in which he alleges, that on the 20th day of October, 1871, he recovered a judgment against the said Hansbarger in the circuit court of the county of Monroe for the sum of $3,861.22, with interest thereon from that day and the costs $213.63; that this judgment was duly docketed on the lien docket of the county of Monroe on the 12th day of November, 1871; that a writ of *fieri facias* was duly sued out upon the said judgment and placed in the hands of the sheriff of said county, and by him returned, "no property found;" that one Henry P. Cummins owned a tract of land in fee situated in said county, on Peters mountain, adjoining the lands of Snow Ballard, Riley Ballard and others, containing about one hundred and thirty acres; that said Cummins sold this land to one Mitchel Comer,

who was put in possession of it, and who paid all the purchase-money; that whether there was a written contract between said Cummins and Comer he does not know, he presumes there was, but is advised, that whether there was or not, in equity he is entitled to an enforcement of the contract, and has by payment of the purchase-money and possession of the property the equitable title to the property; that said Mitchel Comer subsequently sold the same to said A. A. Hansbarger, who was also put in possession, and paid all the purchase-money and has the equitable title to the land; that he is advised that he has a right in a court of equity to sell the same to satisfy his said judgment; that said Hansbarger also owned in fee, at the time said judgment was rendered, a tract of land containing one hundred and fifty-two and one half acres, situated in the said county about two miles from Union, known as the Chapman land, which subsequent to said judgment, to wit: on the 26th day of October, 1871, he sold and conveyed to the defendant, Anderson McNeer, which deed of conveyance was not recorded until the 12th day of November, 1873; that he is advised that said judgment is a lien on said land, and that in equity he has a right to subject the same in the hands of the said McNeer; that said Hansbarger also owned in fee a tract of sixty-four acres of land in said county, on Indian creek, at the mouth of Buck creek, adjoining Jacob Halstead, John Maddey, Woodson Mann and Isaac Mann; that subsequent to said judgment, to wit: on the 12th day of January, 1872, he sold and conveyed fourteen acres and one hundred and forty-eight poles thereof to Woodson Mann, which deed of conveyance was recorded on the 1st day of February, 1872; that he is advised that his judgment is also a lien upon this land; that said Hansbarger also owned in fee an undivided half of three acres on Indian creek, in said county, opposite to the dwelling-house of John Mann, and adjoining Woodson Mann and Isaac Mann. The plaintiff makes the said defendants

in the suit parties to his bill and prays that the said several tracts of land be sold to satisfy his said judgment, and for general relief.

Afterwards such proceedings were had in the cause, that on the 17th day of October, 1877, the said circuit court made and entered a decree in said cause as follows: " This cause came on again this day to be heard upon the papers formerly read, and the report of M. J. Kester, commissioner, to which there is no exception, and was argued by counsel. On consideration whereof the court approving, doth confirm said report and doth adjudge, order and decree, that unless the said A. A. Hansbarger, or some one for him, shall within thirty days from the rising of the court pay to the plaintiff the amount of the judgment in said report mentioned, with interest from the 10th of October, 1877, James F. Patton, who is hereby appointed a special commissioner for the purpose, shall after having advertised the time and place of sale for one month in the *Border Watchman*, a newspaper published in Union, West Virginia, sell the real estate reported by commissioner as liable to the lien of the plaintiff's judgment at public auction to the highest bidder, in front of the court-house door, at Union, upon a credit of six, twelve and eighteen months, except as to a sufficient sum in cash to pay the costs of this suit and expenses of sale, taking from the purchaser bonds with good security for the deferred payments. But before proceeding to execute this decree, said commissioner shall execute a bond before the clerk of this court in the penalty of $3,000.00 with security, and conditioned according to law. Said commissioner in selling said lands shall sell the same in the order in which they are liable, by selling the several tracts in the reverse order of the sales to said A. A. Hansbarger."

It appears that afterwards, on the 17th day of May, 1878, the said court rendered and entered the following decree in this cause, viz : " This cause came on this day to be heard on the papers formerly read, the petition of

R. J. Crebbs and H. M. Piles, exhibits, and the deposition of A. McNeer therewith filed praying to be made parties defendant to this suit, and that their petition may be considered their answer proper and by way of cross-bill, and was argued by counsel. On consideration whereof the court doth adjudge, order and decree, that the said petitioners be made parties defendant in this suit, which is accordingly done, and that their petition be considered an answer and cross-bill. And further the court being of opinion that the lien of the judgment in the bill and proceedings mentioned was from the beginning of the term, at which the same was rendered, and is now a good valid and subsisting lien upon the 'Chapman land' in the petition and proceedings mentioned as against the equitable title held by the said A. McNeer, and as against the claims of the said petitioners, doth refuse to set aside and amend the decree for the sale of said land as prayed for in the said petition."

The said Crebbs and Piles allege in their said petition substantially, that on the 12th day of March, 1877, they bought of the said defendant, A. McNeer, two hundred and fifty-seven and one half acres of land, which includes a tract of land known as the "Fink place" or "Chapman land," containing one hundred and sixteen acres, and that the said one hundred and sixteen acres has been advertised for sale under decree of this court in this cause; that they have paid a large portion of the purchase-money due on said land, and have had possession of the same since the day of purchase, and have expended a great deal of labor upon the same in the improvement thereof; that the said A. McNeer became possessed of and entitled to the said land in the manner following: On or about the 1st day of April, 1870, the said McNeer and the said defendant, Hansbarger, entered into an oral agreement, which was never committed to writing, for the exchange of certain lands, including the said "Fink place," which was then owned by the said Hansbarger; that the said "Fink place" was fully paid

for in land, and was taken possession of by the said Mc-Neer, on or about the 1st day of April, 1870, and that the said McNeer has had full and notorious possession of the same from that date until the 12th day of March, 1877, when the same was purchased by petitioners as stated; that on the 2d day of October, 1871, a deed for the said land was made by the said Hansbarger to the said McNeer, but was not recorded until the 12th day of November, 1873; that in the meantime between the purchase of the said land by the said McNeer and the recordation of the deeds therefor a judgment was obtained by the plaintiff, Pack, against the said Hansbarger, to wit, on the 20th day of October, 1871; and that to enforce the supposed lien for said judgment the said land is now advertised for sale by James F. Patton, commissioner, &c., said sale to be made on the 20th day of May, 1878; that petitioners are advised and believe, that the title of the said McNeer to the said land is good and valid in equity as against the supposed lien of the said judgment, and that the said Pack has no right to subject the said land to sale for the satisfaction of the same, and therefore they pray that they may be made parties defendant to this suit; that the said commissioner be restrained from selling the said land and that the decree for sale be set aside, and that such other relief be granted the petitioners as to the court may seem fit.

The said A. McNeer in his said deposition proves, that he sold the land called the "Fink place" in the said petition of said Crebbs and Piles to the said Crebbs and Piles; that he, McNeer, purchased the same of said Hansbarger about the last days of March, or the 1st of April, 1870; that he and said Hansbarger swapped lands; that he, McNeer, took possession of the land Hansbarger traded to him, and Hansbarger took possession of the land he, McNeer, traded to him on the said 1st day of April, 1870; that the lands he, McNeer, traded to Hansbarger lie on Back creek, about a mile and a half from Centreville, Monroe county, West Virginia, also a house

1880
Special Term.

Pack
v.
Hansbarger
et al.

and lot in Centreville, also another peice in the "farms" near Forrest Hill in same county; that there was no written agreement of said trade; that in the said exchange of lands the said "Fink place" was fully paid for at the time of said exchange of lands; that he was garnished a short time after the said judgment against Hansbarger, to know whether he owed the said Hansbarger anything; that he answered the garnishment, that he did not owe the said Hansbarger anything whatever; that the said petitioners bought of him two hundred and fifty-seven and one half acres of land, including the "Fink place" of one hundred and sixteen acres, and the said petitioners have paid him for the whole tract, a house and lot in the town of Union at $1,000.00, which since that time he, McNeer, sold to William E. Miller, also $200.00 in money; that the price at which he sold the whole tract to the petitioners was $2,700.00 or $2,800.00; that said Crebbs has built a house on said land, but he does not know the value of it, and cleared and cleaned up several acres of ground; that Piles has also had possession of it ever since the said purchase by Crebbs and Piles; that there was an impediment in the way of making the deed to him by Hansbarger for the land sooner than it was made, caused by Hansbarger's wife refusing for a long time to make the deed; that Hansbarger did make him a deed for the land on the 2d day of October, 1871, as shown by the exhibits, but the deed was not recorded until the 12th day of November, 1873; that he cannot recollect when the deed was delivered, but don't think he had it in his possession very long before it was recorded; that for the lands he got from Hansbarger he, Hansbarger, owed a part of the purchase-money, and a decree was rendered for the sale of it for that purchase-money, and he, McNeer, bought at the commissioners' sale; that there came up a deed of trust held by T. F. Parke for about $5,000.00; that the said Parke objected to a confirmation of the sale, unless he, McNeer, would settle the deed

of trust, which he consented to do, and the deed for this portion of the land was not made to him until after the death of Mr. Caperton, who was the commissioner; that he did not want the "Fink place" without the balance of the lands; that from all the facts he is convinced that the deed of Hansbarger could not have been delivered to him at the time of the date thereof, nor very long before it was recorded. No evidence appears in any way in conflict with the facts so proven by said McNeer.

Upon petition and assignment of error therein the said R. J. Crebbs and H. M. Piles obtained from this Court an appeal from and *supersedeas* to the said decree of the said circuit court, rendered on the 17th day of May, 1878; and in this way the said decree is before this Court for review.

The error assigned in the said petition for the appeal and *supersedeas*, and which was relied on by the counsel for the appellant at the hearing and in their briefs, is, that the said "circuit court erred in adjudging that the lien of the judgment of the said Pack was valid as against the equitable title of the said McNeer and the appellants."

*A. C. Houston*, for appellants, cited the following authorities:

Code, ch. 139, § 5; *Id.* p. 474, § 4; Freeman on Judg-§§ 356, 357; 7 Wall. 205; 1 Paige Chy. 280; 28 Gratt. 433, 473; 2 Phill. Chy. 728; 4 Dana 258; 2 Lom. Dig. 494; 4 Gratt. 413; 2 Gratt. 182; 11 W. Va. 108; 2 Min. Inst. (2d ed.) 875; *Id.* 766, 767; 28 Gratt. 401; *Id.* 418; *Id.* 716; 12 W. Va. 105; 1 Rev. Code Va. 1819, p. 365, § 13; 2 Quarterly Law Journal, p. 163.

*A. N. Campbell*, for appellants, cited the following authorities:

Code of Va. of 1849, ch. 118, § § 4, 5; Code of W. Va., ch. 74, § § 4, 5; 6 Rand. 618; 5 Henn. Stat. 409, § 4; 4 Gratt. 415, 416; 6 Rand. 642; 28 Gratt. 401; *Id.*

418; 30 Gratt. 665; 4 Dana 260; 2 Lom. Dig. 488; 4
Min. Inst. 873, 875; 1 P. Wms. 279; Va. L. Jour.
(1877) 113, 114; 2 Gratt. 182; 42 Cal. 488; 4 Leigh 188;
1 Wash. 64; 11 W. Va. 142; 6 Leigh 196; 4 Leigh
599; 15 Pet. 123; 12 W. Va. 108; 15 Gratt. 77;
Sedgw. on Stat & Const. Law 260, 261; Id. 244, 247;
Id. 307, 311; 10 Pet. 527; 7 Cranch 52; Law Journal
(1858) 152; 10 W. Va. 12.

*James F. Patton*, for appellees.

HAYMOND, JUDGE, announced the opinion of the
Court:

The question presented for determination in this cause
is both interesting and important. In order to arrive at
a satisfactory solution of the question of law arising in
this case it is proper to consult the statutes of Virginia
and of this State for years back bearing upon the ques-
tion involved, as well as the decisions of the courts
touching the same. I deem it unnecessary to go further
back in my examination of the statutes than to the Re-
vised Code of Virginia of 1819.

The statute of 1819 chapter 99 of Revised Code of
1819, in the 1st, 2d, 3d and 4th sections thereof is as
follows:

" 1. *Be it enacted by the General Assembly*, that no
estate of inheritance or freehold, or for a term of more
than five years, in lands or tenements, shall be conveyed
from one to another, unless the conveyance be declared
by writing, sealed and delivered; nor shall such convey-
ance be good against a purchaser for valuable considera-
tion, not having notice thereof, nor any creditor, unless
the same writing be acknowledged by the party or par-
ties, who shall have sealed and delivered it, or be proved
by three witnesses to be his, her or their act, before the
court of the county, city or corporation, in which the
land conveyed or some part thereof lieth, or in the man-
ner hereinafter directed, and be lodged with the clerk
of such court to be there recorded.

" 2. No covenant or agreement, made in consideration of marriage, shall be good against a purchaser for valuable consideration, not having notice thereof, or any creditor, unless the same covenant or agreement be acknowledged by the party bound thereby, or proved by three witnesses, to be his, her or their act, if land be charged, before the court of the county, city or corporation, in which the land or part thereof lieth ; or, if the personal estate only be settled or covenanted, or agreed to be paid or settled, before the court of that county, city or corporation, in which such 'personal estate shall remain,' or in the manner hereinafter directed, and be lodged with the clerk of such court, to be there recorded.

" 3. When any such deed or conveyance shall be acknowledged or proved, in order to their being recorded; the livery of seisin thereupon made, in such case, where the same is by law required, shall in like manner be acknowledged or proved, and shall be recorded together with the deed or conveyance whereupon it shall be made.

" 4. All bargains, sales and other conveyances, whatever, of any lands, tenements or hereditaments whether they be made for passing any estate of freehold or inheritance, or for a term of years, and all deeds of settlement upon marriage, wherein either lands, slaves, money or other personal thing shall be settled or covenanted to be left or paid, at the death of the party or otherwise ; and all deeds of trust and mortgages whatsoever which shall hereafter be made and executed shall be void, as to all creditors and subsequent purchasers 'for valuable consideration without notice,' unless they shall be acknowledged or proved, and lodged with the clerk to be recorded, according to the directions of this act; but the same as between the parties, and their heirs, and as to all subsequent purchasers, with notice thereof, or without valuable consideration, shall nevertheless be valid and binding."

And the 12th section of the same chapter declares, that every conveyance  *  *  *  in this act mentioned,

except deeds of trust and mortgages, which shall be acknowledged, proved or certified according to law, and delivered to the clerk of the proper court, to be recorded, within eight months after the sealing and delivery thereof, shall take effect and be valid, as to all persons, from the time of such sealing and delivery, &c.

Under this statute the case of *McLure* v. *Thistle ex'rs*, 2 Gratt. 183, was decided. In this case it was held by the Court of Appeals of Virginia, in 1845, that: "A deed executed before judgments have been obtained against the grantor, under which the purchaser has been put in possession and paid the purchase-money, but which was not recorded until after the judgments were obtained, is void as against such creditors, and the land conveyed thereby is subject to satisfy the judgments. In the case of *Coleman* v. *Cocke*, (6 Rand. 618, 649,) Cocke had recovered a very large sum by decree against William Bentley, who had been Mrs. Cocke's guardian. Whilst indebted to his ward, William Bentley had bought a tract of land and paid for it, without getting a title; but after some years he had caused the vendor to make a conveyance to his son, William A. Bentley, who, by his father's direction, conveyed a part of the land to another son, Peter B. Bentley, who conveyed it to Henry E. Coleman for a valuable consideration and without notice of any fraud on the part of the Bentleys; but neither the deed to Coleman, nor that from Wm. A. to Peter B. Bentley, nor from the original vendor to William A. Bentley, *was recorded*. The conveyance to Coleman was in 1813, and the decree obtained by Cocke against Bentley was in 1819. It was held that inasmuch as William A. Bentley had acquired (by his father's direction to the original vendor to convey to him) an *equitable title* which did not need to be recorded, and that Coleman having become a *bona fide* purchaser for value, without notice, of that equitable title before Cocke's decree, he was, as to that, entitled to priority over such decree, and it would therefore do. Cocke no good to set the conveyance aside as unrecorded, since

Coleman would be immediately remitted to his superior equity.  2 Lomax Digest 488.  It is a long established rule of courts of equity that (apart from any positive provision of a statute to the contrary) where one has an *equitable interest* in land, with a good right to call for the conveyance of the legal title, and a subsequent encumbrancer (e. g. a *judgment-creditor,*) whose debt did not originally affect the land, acquires the legal title, he shall notwithstanding be postponed to the equitable claimant. For since the subsequent encumbrancer did not *originally* take the land for his security, nor had in his view an intention to affect it, when afterwards the land is affected by his lien, and he comes in claiming *under the very person* that is obliged in conscience to make the assurance good, he stands in that person's place and is postponed, despite his legal title, to the *superior equity* of the adverse claimant.  2 Lomax Dig. 487 ; *Burgh* v. *Francis*, 1 P. Wms. 279 ; *Finch* v. *Earl of Winchelsea*, 1 P. Wms. 282 ; *Coleman* v. *Cocke*, 6 Rand. 618 ; *Withers* v. *Carter* 4 Gratt. 411.

Our statute as found in the Code of this State of 1868, p. 696, and taken from the Code of Virginia of 1849, as to liens of judgments on real estate is as follows :

"5. Every judgment for money rendered in this State heretofore or hereafter against any person, shall be a lien on all the real estate of or to which such person shall be possessed or entitled, at or after the date of such judgment, or, if it was rendered in court, at or after the commencement of the term at which it was so rendered, except as follows :

"6. A judgment rendered before the 1st day of July, 1850, shall as against a purchaser or creditor claiming under a deed made or judgment obtained before that day, or against the heirs or devisees of a person dying before that day, affect no more of such real estate than would have been liable thereto under the laws in force at the time such judgment was rendered.

"7. No judgment shall be a lien on real estate as

against a purchaser thereof for valuable consideration without notice, unless it be docketed according to the third and fourth sections of this chapter, in the county wherein such real estate is, either within ninety days next after the date of the judgment or before a deed therefor to such purchaser is delivered for record to the recorder.

"8. The judgment lien may always be enforced in a court of equity."

Mr. Freeman in his work on Judgments at §356, p. 309 says: "Whenever a lien attaches to any personal property, it becomes a charge upon the precise interest which the judgment-debtor has, and no other. The apparent interest of the debtor can neither extend nor restrict the operation of the lien, so that it shall encumber any greater or less interest than the debtor in fact possesses. 'Under our system, judgments are liens upon all interests in real estate legal or equitable. And it is wholly immaterial, as between the parties, whether the interest of the judgment-debtor appears of record or not.' *Lathrop* v. *Brown*, 23 Ia. 40. Where judgments are liens upon equitable interests, such interests are bound, whether the instruments or conveyances attesting the defendant's rights are recorded or unrecorded. *Richter* v. *Selin*, 8 S. R. 425; *Niantic Bank* v. *Dennis*, 37 Ill. 381."

The same author at § 357, p. 310 says: "The judgment-lien 'is a lien only on the interest of the judgment-debtor whatever it may be. Therefore, though he seems to have an interest, yet if he have none in fact, no lien can attach.' (*Churchill* v. *Morse*, 23 Iowa 229). The rights of the lien-owner cannot exceed those which might be acquired by a purchase from the defendant, with full notice of all existing legal or equitable rights belonging to third persons. (*O'Rourke* v. *O'Conner*, 39 Cal. 442). The attaching of the lien upon the legal title forms no impediment to the assertion of all equities previously existing over the property. (*Carter's ex'r* v. *Bank of Georgia*, 24 Ala. 37, 64; *Walker* v. *Moody*, 65 N. C. 599; *Talman* v. *Farley*, 1 Barb. 280). The judg-

ment-lien being general, is liable to be displaced in equity in favor of a lien having greater equity. * * * The judgment-lien is, in equity, but a charge on the title held by the defendant, when the lien attaches, or which is subsequently acquired. It can only hold the legal estate subject to the equity. (*Whitworth* v. *Gaugain*, 1 Ph. 278; *Burgh* v. *Francis*, 3 Swan. 536 n.; *Finch* v. *Earl of Winchelsea*, 1 P. Wms. 277). ' It is well settled, that a judgment-lien on the land of the debtor is subject to every equity which existed against the debtor at the rendition of the judgment; and courts of equity will always limit the lien to actual interest of the judgment-debtor.' (*Ells* v. *Tansley*, 1 Paige Chy. 280; *Morris* v. *Morvatt*, 2 Paige Chy. 58."

In the case of *Ells* v. *Tansley*, 1 Paige Chy. *ubi supra*, it was held: " Where certain lands belonging to E. were sold under a loan-office mortgage, and W. by request, bid off the same for E., E. being absent; E., a few days after the sale, refunded the money to W. At the time of the sale, T., one of the commissioners of loans, held a judgment against W.; T., together with his co-commissioner, in June, 1819, executed a deed to W.; in March, 1819, T. issued an execution against W., and in August, 1824, caused the mortgaged premises to be sold under judgment, and bid in the same himself. In September, 1819, W. executed to E. a release of all his interest in the premises; and it was agreed between them that no deed should be executed to W. by the commissioners. T. purchased in the premises under his judgment, with a full knowledge of E.'s rights. Held, that the purchase by T. could not be sustained, and that he could not retain the lien of his judgment upon the premises. Under these circumstances, if the deed had been executed by the commissioners at the time of sale, the title would have been in E. as a resulting trust, and W. could only have held the deed as a security by way of mortgage for the money advanced by him. The lien of a judgment does not in equity attach upon the mere legal title to land

existing in the defendant, when the equitable title is in a third person. And if a purchaser under the judgment has notice of the equitable title before his purchase and the actual payment of the money, he cannot protect himself as a *bona fide* purchaser."

In the case of *Whitworth* v. *Gaugain*, 19 Eng. Chy. R. and 1st Ph. Chy. R., side page 728 and top page 727, the syllabus is : " Notwithstanding the stat. 1 and 2 Vict. c. 110, which gives to a judgment the effect of an equitable charge upon the land of the debtor, an equitable mortgagee retains his right in equity to enforce his security against the title of a creditor under a subsequent judgment, although the latter may have acquired the legal seisin and possession of the land under an *elegit* without notice of the mortgage."

The Lord Chancellor in this case at page 729 said : "It (meaning the judgment) can only attach upon the interest which remains in the debtor, viz: the legal estate subject to the equitable charge. Upon a judgment obtained against a mere trustee a court of equity would never permit the trust-property to be applied in satisfaction of the judgment ; and for the same reason, if the property is subject to a trust short of its full value, the judgment can only in equity affect that which remains after the trust is satisfied, for this alone is the property of the debtor." The Lord Chancellor at page 730 cites *Burgh* v. *Francis* and *Finch* v. *The Earl of Winchelsea ubi supra*, and says : "So in the *Forum Romanum* it is said that ' if A. takes a mortgage by a defective conveyance, and B. afterwards obtains judgment upon a bond-debt against the mortgagor, and so extends the mortgaged lands, then a court of equity will relieve A. and oblige B. to supply the defect in the mortgage. For in this case B. was only a bond-creditor, and his original security was only *in personam,* and therefore when he betters his security by a judgment *in rem,* yet this shall only be a lien upon the land as it was in possession of the mortgagor or his heir, and that is subject to a mortgage

defective at law, but which was good in equity." . This case was decided in 1846.

In the case of *Withers* v. *Carter et al.*, 4 Gratt. 407, it was held (according to the syllabus :)

" 1. A deed, which was lost after it was executed, and before it was recorded, is void as against the creditors of the grantors, and cannot be set up against them in a suit by the grantee brought more than eight months after its execution.

" 2. Although the statute avoids an unrecorded deed as against creditors of the grantor, it does not affect a pre-existing equitable estate of the grantee acquired by purchase from the grantor.

" 3. This case distinguished from *McLure* v. *Thistle's ex'rs*, 2 Gratt. 182.

" 4. A creditor by judgment or decree may in equity subject the debtor's equitable interest in land sold by him for the purchase-money unpaid.

" 5. The fiction of law, which gives a judgment relation to the first day of the term, applies to all cases in which the judgment might have been rendered on that day ; but not to a case in which it could not have been rendered.

" 6. There is a creditor by judgment prior to a sale of land by his debtor, and there is purchase-money unpaid sufficient to satisfy the judgment, when another creditor recovers judgment against the same debtor. This last cannot insist that the first shall go against the land and leave the purchase-money unpaid for him ; but the purchaser of the land is entitled to have the purchase-money applied to relieve his land."

In this case (which was decided in January 1848) William H. Triplett in pursuance of a *previous contract* in writing, dated the 27th of February, 1834, on the 25th day of January, 1835, executed and duly acknowledged a deed conveying a tract of land in the county of Loudon to Jonathan Carter ; and Carter, as it seems, on the same day committed the deed to his son, to be delivered to

the clerk of the county court of Loudon county for record, and by the son it was lost and was never found, and consequently was never recorded. Meanwhile, certain creditors of Triplett having obtained judgment against him at a term of court of the county of Frederick, commencing the 26th of January, 1835, (one day after the execution of the lost deed) attempted to subject the land in the hands of Carter to these judgments. Judge Baldwin in delivering the opinion of the court in this case at pages 410, 411 says:

"The deed from Triplett to Carter not having been delivered to the clerk to be recorded is void as against the creditors of Triplett; and cannot be set up against them in this suit, brought more than eight months after the execution of the deed, though proved to have been accidently lost in the attempt to transmit it to the clerk's office. * * But though the statute avoids the deed as against the creditors of the grantor, it does not affect the pre-existing equitable estate of Carter acquired by purchase from him. The judgment and decree in question were obtained at the January term, 1835; and Carter was then the owner of the land; he bought it, as appears from the articles of agreement in February, 1834, received the possession, and had paid up a considerable part of the purchase-money. Nothiug was wanting but a valid conveyance of the legal title, and that he would have had, but for the intervention of the statute; a perfect deed having been made to him before the commencement of the term, which however by reason of its accidental loss was not delivered to the clerk for recordation. If no deed had been made at all, it is clear that Carter's title would have been good in equity, though not at law, against creditors of Triplett by judgments subsequently recovered. The effect of the statute was to render the deed *quoad* the creditors of the grantor a mere nullity, and so to leave the subject precisely in the same situation as if no deed had been made or attempted. It cannot be doubted that a fair purchaser of the equita-

42

ble estate has a right to hold it against creditors of the vendor who have not previously recovered judgments. He cannot do so, it is true, at law, which only notices the legal title, but he can in equity, which notices, protects and enforces the equitable title. A vendor who has not conveyed the legal title is a trustee for him, and equity will enforce the trust not only against the vendor, but also against all persons claiming under him, unless they can show superior equity, or equal equity with the advantage of having obtained the legal title. A creditor of the vendor, who has not recovered judgment against him until after his sale of the equitable estate to a *bona fide* purchaser for valuable consideration, has not equal equity; for both law and equity recognize that dominion over property which enables the owner to sell it, though indebted at the time; at law the sale is accompained by a conveyance of the legal title, and in equity by the agreement to convey it. Sugden in his Law of Vendors says: ' If any judgment should be entered up after the purchase-money being an adequate consideration, is actually paid, equity would relieve the purchaser against the judgments, notwithstanding that they were entered up previously to the conveyance; the vendor being in equity only a trustee for the purchaser, and a judgment being merely a general and not a specific lien on the land; and this equity prevails, whether the judgment-creditor had or had not notice of the contract.' " Sug. Vend. Am. ed. of 1836, from 9th Lond. ed. p. 613.

Judge Baldwin then cites and comments upon the cases of *Burgh* v. *Francis*, 1 P. Wms. 279; *Taylor* v. *Wheeler*, 2 Vern. R. 564, and *Finch* v. *Earl of Winchelsea*, 1 P. Wms. 282, and then at pages 412 and 413 he says: " *The foregoing authorities, if any be requisite, are more than sufficient to show, that a good equitable title acquired by a purchaser is paramount in equity to subsequent judgments of the vendor's creditors recovered before the vendee has obtained a conveyance of the legal title, or though he has obtained one that is void at law.* If this were not so, then a

purchaser would not be safe in relying upon an executory contract, but would be obliged to obtain a conveyance of the legal title at the moment of his purchase. The extensive mischief of such a doctrine must be obvious, when we consider that the conveyance of the legal title is often delayed for years, and not unfrequently from causes beyond the control of the parties, for example, a tedious chancery suit; and that the creditors of an insolvent vendor recovering judgments against him would be enabled to reach the property in the hands of his vendee, however long and notorious his possession under a contract fully performed upon his part. No one supposes that our registry law requires, in relation to bargains, sales and other conveyances of lands, tenements and hereditaments, the recordation of the executory contracts. By an amendment introduced at the revisal of 1819 (1 Rev. Code, p. 365, § 13) authority is given to have title-bonds and other written contracts in relation to lands admitted to record, in like manner as deeds of conveyance of land, and when so admitted they are notice to subsequent purchasers of the existence of such bond or contract; but that is the only effect of the provision, which does not avoid them either as to purchasers or creditors, if not admitted to record. It is the deed of conveyance, therefore, and that only, which the law avoids for want of recordation, and the executory contract is left untouched. No deed of conveyance is necessary to confirm its validity, and how an abortive attempt to obtain a valid conveyance can destroy the pre-existing equitable title is beyond my comprehension; nor can I conceive what merger there can be, in regard to creditors, of the equitable estate in the legal title by force of a deed which as to creditors is a blank piece of paper. The policy of the statute in avoiding, as far as it does, for want of recordation, those instruments which it requires to be recorded is obvious; that is necessary to enforce its requirements; and it would have been absurd to avoid those contracts which it does not require to be recorded.

The effect of the provision avoiding the unrecorded deed is to deprive the vendee of the advantage he would otherwise obtain from it, and so to prevent him from obstructing creditors and subsequent purchasers in their pursuit of the property at law, or standing by force of the conveyance on higher ground in equity; and thus leaving the equitable right to be decided at the instance of the one or the other party to the controversy, in a court of equity, according to the principles of equity and good conscience, unshackled by the formal title."

Let us pause here, and enquire, if in this case the agreement and contract of sale had been verbal and executed by possession, judgment, &c., so that the purchaser was entitled to demand and receive from his vendor in a court of equity the legal title for the land, and there had been no written agreement of sale between the vendor and vendee antecedent to the deed, would not the strong and eminently just reasons and argument of Judge Baldwin have applied as well for the protection of the equitable interest or right based upon such verbal contract against the subsequent judgment-creditor of the vendor, as for the protection of the equitable right of the vendee based upon the agreement in writing, against such judgment? And do not all the authorities, which I have cited in relation to the protection of equitable interests in land against the lien of subsequent judgment-creditors of the vendor, apply as well and with equal force in principle and in justice to a good equitable interest based upon such verbal contract, as to a good equitable interest in lands based upon written contract? Where is or should be the difference? Is not the one equally as valid and enforceable in a court of equity as the other? There is no difference in the validity of the two equities. The only material difference is in the mode of proving the equities. The one is proven by parol evidence and the other by the written contract, but when the equitable interest is established by proof in the one case or the other, the equities are equally valid in a

court of equity. And if the one equity is as valid and enforceable in a court of equity as the other, upon what principle of equity or justice should the one equity be protected in a court of equity against the lien of a subsequent judgment-creditor and not the other under the statute drawn in question in the decision of the last named case? But more of this after we have proceeded further.

Judge Baldwin in the same case at page 415 further says: "1 think it clear that Carter's creditors by judgment could have subjected his equitable estate in a court of equity, to the exclusion of Triplett's creditors; for courts of equity will enforce the security of a judgment-creditor against the equitable interest in the freehold estate of his debtor, treating the judgment as in the nature of a lien upon such equitable interest. 2 Story's Eq. 1216, b. And as the relief to Carter's creditors would of course be founded upon his equitable ownership, the same reason would equally entitle him to the interposition of a court of equity in his behalf. In *Prior, &c.* v. *Penpraze,* 2 Eng. Exch. Rep. 46, it was held that a purchaser may maintain a bill in equity, to restrain a creditor of the vendor from proceeding by *scire facias* to revive a judgment, in order to obtain execution against the estate that was sold before the judgment, and ineffectually conveyed to the purchaser, whereby the legal estate descended since the date of the judgment, to the heir at law."

Cannot the judgment-creditor proceed in a court of equity to enforce the lien of his judgment upon the equitable interest of his debtor in land based on a verbal contract enforceable in a court of equity, as well as against the equitable interest of his debtor in land based upon a contract in writing? And does not the reasoning and principle announced by Judge Baldwin apply with equal force and justice to the one case as to the other? In fact the case at bar is an apt illustration of the principle; for it will be seen on reference to the bill and proceedings in this cause, that the plaintiff has proceeded to en-

force his judgment-lien against the equitable interest of said Hansbarger in a part of the land decreed to be sold, which is based upon an alleged parol contract. Judge Baldwin also cites the case of *Coleman* v. *Cocke*, 6 Rand. 618, 643, *ubi supra*.

Judge Baldwin in the said case of *Withers* v. *Carter et al.*, *ubi supra* at page 416, 4 Gratt., further says: " I learn it is supposed by some that the decision of this court in *McLure* v. *Thistle's ex'rs*, 2 Gratt. 182, gives countenance to the idea, that though a purchaser has by an executory contract acquired a good equitable title to land, which, until he receives a conveyance of the legal title from the vendor, is exempt in equity from intervening judgments against the latter, yet that such equitable title will avail him nothing, after he has obtained such conveyance, against judgments subsequently recovered, unless the deed has been duly recorded. But it was not the intention of the court to decide any such proposition, though the reported case without close examination, may be liable to misconstruction, from the reporter's attention not having been drawn by the court to the reason for its general affirmance of the chancellor's decree. The case was one in which there was no evidence of an executory contract or possession prior to the deed, nor was any asserted by the defendant's answer; he relied simply upon his deed, his possession under it, and his payment of the purchase-money. I recollect distinctly that two of the judges who sat in the cause, (the president and myself) were decidedly of opinion that if it had appeared from the record, that the defendant prior to the execution of the deed had acquired by his purchase *a good equitable title*, he ought to be protected against the judgment; and we concurred in the affirmance of the decree merely upon the ground that there was no evidence of the defendant's right other than the deed of conveyance."

After the decision of the case of *Withers* v. *Carter et al.*, (which as we have seen was in 1848) and at the revisal of 1849 an amendment was incorporated in the

statute of 1819, hereinbefore cited. It is contained in sections 4 and 5, ch. 118, Code of 1849 of Virginia, which took effect on the 1st day of July, 1850, and is as follows :

"4. Any contract in writing made in respect to real estate, or goods and chattels, in consideration of marriage, or made for the conveyance or sale of real estate, or a term therein of more than five years, shall from the time it is duly admitted to record be as against creditors and purchasers as valid, as if the contract was by deed conveying the estate or interest embraced in the contract.

"5. Every such contract, every deed conveying any such estate or term, and every deed of gift, or deed of trust or mortgage conveying real estate or goods and chattels, shall be void as to creditors and subsequent purchasers for valuable consideration without notice, until and except from the time it is duly admitted to record in the county or corporation wherein the property embraced in such contract or deed may be."

These sections were in force in Virginia without alteration or amendment, from the time they took effect, until this State was admitted into the Union in 1863, and continued in force thereafter without alteration or amendment in this State until the Code of this State of 1868 took effect on the 1st day of April, 1869. Code of Virginia of 1860, sections 4 and 5 of ch. 118. And the same sections were carried into the Code of this State of 1868, without amendment and constitute sections 4 and 5 of ch. 74 thereof. The amendment of the statute so as to include contracts in writing for the conveyance or sale of real estate for a term greater than five years, may have been induced by the decision of the Court of Appeals in the case of *Withers* v. *Carter et al.*, 4 Gratt. 407. The effect of the amendment was to place such written contracts unrecorded upon the same footing, as to creditors and purchasers for valuable consideration without notice, as unrecorded deeds. This being so, then every unrecorded or unregistered contract in writing for the con-

veyance or sale of real estate for a greater term than five years since the 1st day of July, 1850, is void as to creditors and purchasers for valuable consideration, without notice, the same as an unrecorded or unregistered deed conveying such real estate, or term, is now and would have been under the statute, and as it was before the amendment·

In the case of *Lowery* v *Buffington et al.*, 6 W. Va. 249, this court decided, that when there has been a part performance of a verbal contract for the sale of land by the purchaser being put into possession of the property, and payment of the purchase-money or a part thereof and an offer to pay the residue according to the contract, and valuable improvements have made on the land by the purchaser on faith of the contract, the statute of frauds cannot be successfully pleaded in bar to the performance in a court of equity ; and that applications to the court to compel specific performances are addressed to its discretion ; but it is not an arbitrary or capricious discretion, but a sound judicial discretion regulated by the established principles of the court. See also *Vickers* v. *Sisson's adm'r et al.*, 10 W. Va. 12.

I might refer to other decisions of this Court bearing upon the same subject ; but the principle is so well established and sanctioned with us, and is so familiar to the legal profession, that to cite them would be a work supererogation. These decisions however establish the principle as recognized and established with us, that a purchaser by verbal contract executed by possession, payment, &c., has a good equitable title or interest in the land so purchased under and by virtue of such contract against his vendor, which a court of equity will upon proof thereof enforce by compelling a conveyance of the legal title, and that such equitable title or interest in the land so acquired will in equity generally be enforced against the vendor, when properly established, as readily as if the contract of sale had been in writing. This being established, it must follow that in the case of a purchaser of lands by verbal contract, where the pur-

chaser has acquired an equitable title or interest in the land under such contract, that the vendor of such purchaser is considered in equity the trustee of the purchaser as to the legal title to the land, as much as though the contract of sale had been in writing. These principles being established, if a good equitable interest has been acquired in lands by a purchaser under a veibal contract, which a court of equity will recognize, respect and enforce against the vendor, it must follow, that a court of equity will protect such equitable title or interest against a subsequent judgment-creditor of the vendor, where no deed has been made, and generally where a deed has been made but is void because not recorded prior to the judgment, unless such verbal contract, under which such equitable interest is acquired, is embraced and included by the statute, the same as written contracts for the conveyance or sale, or deeds conveying land, where they have not been recorded, so far as relates to creditors and purchasers for valuable consideration without notice.

In the case of *McClaskey & Crim et al.* v. *O'Brien*, 16 W. Va. 91, we considered and decided some questions bearing upon questions arising in this case as to merger, extinguishment, &c.; and among other things this Court in that case held as follows:

" 13. Generally, where a deed of trust creditor purchases the land conveyed in trust from the deed of trust debtor, and such debtor conveys the land to such purchaser, which deed is duly recorded, the deed of trust will be upheld as a subsisting lien thereon, for the debt and interest thereby secured, for the protection of the deed of trust creditor to the extent of such debt and interest, against an intervening title or intervening judgment-creditor, unless injustice would be done thereby.

" 14. In such case an extinguishment of the deed of trust-debt will not be presumed against the equities of the parties.

" 15. The general rule of law between parties is, that

when a contract is avoided for any cause, each is restored to his previously existing rights." See also point 16 in same case.

These rulings are in accordance with the decision in the case of *Withers* v. *Carter*, in 4 Gratt. (*ubi supra*) so far as they in principle are analogous or bear thereon. It is true, that the equitable ground of priority protection and relief is not admitted and administered *against the positive provisions of a statute* to sustain the prior against the subsequent encumbrancer, as in the case of *McLure* v. *Thistle's ex'rs,* 2 Gratt. 182. See 2 Min. Inst. 875. Where statute enactments do not interfere, a judgment-creditor can acquire no better right to the estate of the debtor than the debtor himself has when the judgment is recovered. He takes it subject to every liability under which the debtor held it, and subject to all the equities which exist in favor of third parties ; and a court of equity will limit the lien of the judgment to the actual interest, which the debtor has in the estate. Authorities hereinbefore cited and *Shipe, Cloud & Co.* v. *Repass et al.,* 28 Gratt. 716 ; *Morton* v. *Richards et al.,* 4 Dana 258.

A case illustrative of the foregoing principle and parallel to *Withers* v. *Carter,* 4 Gratt. 407, and regulated by the doctrine laid down therein is still to be found ; as for example, in a *parol contract* partly performed by the vendee by taking possession, &c., whereby an *equitable title* vests in him, which as yet is not required to be registered. 2 Min. Inst. 875. This point was expressly decided in the case of *Massee* v. *McIllwaine et al.,* 2 Hill's (S. C.) Chy. 428. Lomax, in the 2d vol. of his Digest at page 494 says : " The registry acts, it has been held, do not affect the great fundamental principle of equity ; but every purchaser claiming under a registry-deed is left open to any equity which a prior purchaser or encumbrancer may have." It is manifest, I think, that the principles settled in the case of *Withers* v. *Carter,* 4 Gratt. 407, as to equitable interests in land

applies to and covers an equitable interest in land acquired by a purchaser by verbal contract executed by possession, &c., as well as to written contracts. The syllabus of the case and the language employed by the very able judge, who delivered the opinion of the court, in discussing and declaring the great principles of equity governing as to the holders of such equitable interests as against subsequent judgment-creditors, clearly shows such to be the fact. And the principles declared by the court in its opinion in that case as to equitable interests in land and the protection, to which such equitable interests were entitled and would receive in a court of equity as against subsequent judgment-creditors, I regard as a rule governing property which should not be departed from by this court at this late day, unless under very peculiar circumstances, if at all. When a rule, by which the title to real property is to be determined, has become established by positive law or by deliberate judicial decision, its inherent correctness or incorrectness, its justice or injustice, in the abstract, are of far less importance than that it should itself be constant and invariable. *Smith & George* v. *McDonald & Colton*, 42 Cal. 484 ; *Paup's admr.* v. *Meigs et al.*, 4 Leigh, opinion of Judge Tucker p. 188.

I now proceed to enquire, whether the statute in question, to wit: the 4th and 5th sections of chapter 74 of the Code of this State, (which are the same as sections 4 and 5 of chapter 118 of the Code of Virginia of 1849, as we have already stated) make void an equitable interest in land acquired by verbal contract of purchase executed by possession, &c., as to subsequent judgment-creditors. And first it must be observed, that verbal contracts are not mentioned in either of the sections, and neither are equitable interests in land acquired by purchase by verbal contract mentioned in either of the said sections. No contracts are named in either sections except contracts in writings and deeds of conveyance. It cannot be said that the words " contract in writing " as used necessarily

1880
Special Term.

Pack
v.
Hausbarger
et al.

include or were intended to include verbal contracts of purchase of lands with as much plausibility as it might have been said before the said decision of *Withers* v. *Carter*, that the 4th section of said chapter 99, 1 Revised Code of 1819, p. 362, included contracts in writing for the conveyance or sale of lands as well as deeds conveying lands. But, as we have seen, it was properly held that it did not.

I can see with but little exercise of the imagination reasons why verbal contracts for the sale or conveyance of land executed by possession, &c., were not included or intended to be covered by either of said sections. The language used in the said sections is not ambiguous, but it is plain and definite. The construction of these sections however has been considered and passed upon in the case of *Floyd, trustee* v. *Harding et al.*, 28 Gratt. 401. In this case the syllabus is as follows: " In 1856 L. sells land to T., by parol contract receives all the purchase-money and puts T. in possession. In January, 1867, L. executes a deed to T., by which he releases all the land to T. and warrants the title. T. then sells the land to W., and W. conveys to F. In March, 1866, B. recovers a judgment against L. which is docketed within the year. In a suit against F. to subject the land to satisfy the judgment against L. HELD: 1. That the registry acts do not apply to a parol contract for land; and T. having paid all the purchase-money, and having been put into possession so that he had a valid equitable title to the land, it is not subject to the lien of the judgment against L. 2. The valid equitable title of T. is not so merged in the legal title acquired by the deed of L to him, as to subject the land to the lien of the judgment against L. 3. The principles of the case of *Withers* v. *Carter*, 4 Gratt. 407 approved." In this case Judge Staples delivered the opinion of the court, in which Judges Moncure and Christian concurred, the other judges, to wit, Anderson and Burks being absent. Judge Staples in his opinion expresses many of my views upon

the question involved so well and clearly, that I deem it proper to copy parts of it herein. The judge after copying in his opinion the said sections 4 and 5 of chapter 118 of the Code of Virginia of 1849 and in speaking in relation thereto at pages 404-414, says :

" These provisions, as will be seen, do not expressly or even by fair implication, include all contracts for the sale of land. They apply only to contracts in writing. Having provided for the recordation of written contracts in the fourth section, the framers of the statute by the use of the words 'such contracts' in the fifth, evinced a deliberate purpose to confine the operation of that section to contracts in writing. It is obvious that the language was carefully chosen, and the omission to require the recordation of *every* contract was not accidental. In order to give the statute the construction now contended for, we must strike out, or wholly disregard, the word 'such' in the other. Are we authorized by any rule of interpretation to take such a liberty with a legislative enactment plain and explicit in its terms.

" While in the construction of statutes the constant endeavor of the courts is, to ascertain and give effect to the intention of the Legislature, that intention must be gathered from the words used, unless a literal construction would involve a manifest absurdity. Where the Legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding that the Legislature did not mean what it has actually expressed. The authorities upon this principle are almost innumerable. It is unnecessary to cite them, as they may be found in Dwarris on Statutes, 181-4, 209, 204-5, 208.

" In this connection I cannot forbear quoting briefly a portion of the opinion of the Supreme Court of the United States in the case of *Dunn* v. *Reid*, 10 Pet. 524. The case turned upon the proper construction to be given to certain recording acts of North Carolina and Tennessee. Mr. Justice McLean, after giving his con-

struction of the statute said : 'This, it must be admitted, when we consider the mischief the law was probably intended to remedy, is a somewhat technical construction of the act; and cases may be found where courts have construed a statute most liberally to effectuate the remedy ; but where the language of the act is explicit, there is great danger in departing from the words used, to give an effect to the law which may be supposed to have been designed by the Legislature. * * * It is not for the court to say, where the language of the statute is clear, that it shall be so construed as to embrace all cases, because no good reason can be assigned why they were excluded from its provisions.'

" If the rule of construction here laid down be correct, there would seem to be an end of the question. But if we are permitted to go outside of the express language in pursuit of the supposed intention of the Legislature, have we such satisfactory and conclusive evidence of that intention here, as to justify the courts in giving to the statute an interpretation so palpably in conflict with its language?

" In answering this question it is important to bear in mind the rules of law in respect to parol contracts for the sale of lands. Courts of equity treat such contracts, when there is part performance, as valid and effectual as those evidenced by the most solemn instruments of writing. In order to prevent the possibility of fraud in engrafting this exception upon the statute of frauds, it is settled, that the parol agreement relied on must be certain and definite in its terms; the acts proved in part performance must refer to, result from or be done in pursuance of the agreement; and the agreement must have been so far executed that a refusal of full execution will operate as a fraud upon the party, and place him in a situation which does not lie in compensation. *Wright v. Packet*, 20 Gratt. 370 ; 2 Lead. Cases in Eq., 1052.

" When these circumstances concur it is as much a matter of course for the equity courts to decree a speci-

fic execution as for the common law courts to award damages for the breach of a written contract. The purchaser is regarded as the real beneficial owner of the estate, and the vendor a mere trustee of the legal title for his benefit. Whatever loss may fall on the estate is the loss of the purchaser. Whatever advantage may accrue to it is his gain. This doctrine is now too firmly settled ever to be changed by anything short of an express legislative enactment. It is to every intent the law of property, as much so as if the exception had been incorporated in the statute of frauds. Upon the faith of its existence, purchases of valuable estate have been made and held throughout this commonwealth. There can be no ground of controversy upon these points. It may be further affirmed that the title thus vesting in the purchaser under a valid parol contract is good against all the world, except subsequent purchasers of the legal title for valuable consideration without notice. I speak now without reference to the recording acts, that the equitable estate of the purchaser is good against creditors of the vendor is incontrovertible. It has been over and over again decided that the judgment-creditor can acquire no better right to the estate than the debtor himself has when the judgment is recovered. He takes it subject to every liability under which the debtor held it, and subject to all the equities which exist at the time in favor of third persons; and a court of chancery will limit the lien of the judgment to the actual interest which the debtor has in the estate. The creditor is in no sense a purchaser; he has no equity whatsoever beyond what justly belongs to his debtor; his claim is to subject to his lien such estate as the former owns and no more.

" These principles have been time and time again announced by the courts of England, by this Court, and by the Supreme Court of the United States, and by the courts of many other States of the Union. See the cases cited by Judge Baldwin in Withers v. Carter; Brown v.

*Pierce,* 7 Wall. U. S. 205; *Rogers* v. *Bonner,* 45 N. Y. 379; *Money* v. *Dorsey,* 7 Smed. & M. 15; *Morton* v. *Rebards,* 4 Dana 258. Numerous other cases might be mentioned, but it is unnecessary.

" The revisers of 1849 were men learned in the law; they were perfectly familiar with these principles. They could not but be aware that the question of the rights of purchasers under parol contracts would constantly arise in the courts. If they intended to make this fundamental revolution in the laws of property, and utterly annihilate, for the benefit of creditors, a large class of contracts universally recognized as valid, they certainly would have expressed their intention in plain and unmistakable language. It is not reasonable to suppose they would have left a matter of so much importance to all the hazards of judicial interpretation—an interpretation only to be reached by disregarding the plain words of the statute, and having no other foundation than a supposed public policy.

" But we are told that every consideration, prompting the revisers to require the recordation of deeds and title-bonds, applies more strongly to mere verbal agreements for the sale of lands. A little reflection will, I think, show that this is not true, certainly not to the extent asserted in the argument.

" When the vendee has a deed or other written evidence of his purchase, there is no hardship in requiring him to place it upon the record. It is gross *laches* not to do so, which the Legislature might well declare good ground for forfeiture. But in many cases the vendee has neither deed nor title-bond. He is often deprived of one or both by the fraud of the vendor, or by his death or sickness, or by some controversy as to the precise terms of the contract; and at last not unfrequently he is compelled to resort to a court of equity for redress. Such cases are constantly occurring in every community. The books abound with them. To require that such contracts shall be recorded is simply to require an im-

possibility. It is to provide that one man's property may be taken for another man's debts, without the fault of the owner, and without the possibility of guarding against it by the exercise of the greatest diligence. It seems to be forgotten that one of the reasons influencing the courts to engraft an exception upon the statute of frauds in cases of parol contracts partly performed are, that oftentimes the purchaser is kept out of his deed or other writing by the fraud of the vendor, or other circumstances beyond the control of the purchaser. Who can say that the consideration, which influenced the courts to engraft this exception upon the statute of frauds, did not influence the Legislature also to respect the same principles in the recording acts.

"But in ascertaining the meaning of a statute it is sometimes important to find out the mischief to be corrected as well as the class to be protected. Who are the men to be most benefited by this enlarged interpretation of the statute? Not purchasers, certainly. They are fully protected by the provision requiring the recordation of deeds and title-bonds. When the contract is evidenced by a writing it is not necessary the purchaser shall take possession under his contract. Unless, therefore, the writing is recorded, in very many cases it is impossible that a subsequent purchaser can have any knowledge of the alienation. There is nothing to give him notice, or even to put him upon enquiry. It was very proper under such circumstances to require the registration of the deeds and of the written executory agreement, not necessarily accompanied with possession. But when the contract is merely in parol, possession of the property under the agreement is indispensible. It must be a visible notorious possession. Whether under our recording acts mere possession is sufficient to charge all persons dealing with the property with knowledge of all the equities of the tenant in possession, it is unnecessary now to decide, as no such question arises. All agree that the notice must be such as to affect the conscience

1880
Special Term.

Pack
v.
Hansbarger
et al.

of the subsequent purchaser. *Siter, Price & Co.* v. *Mc-Clanahan et al.,* 2 Gratt. 280. If the first purchaser is not in possession, he must have his deed or title-bond recorded, and the registry of them will give notice. If he is in the actual possession under a parol agreement as owner of the estate, that possession will generally be so notorious, so well understood, that persons disposed to act in good faith will be rarely misled by the absence of registration. It seems to me, therefore, that, so far as subsequent purchasers are concerned, no such inconvenience will result as is apprehended from holding that the statute does not extend to parol contracts; certainly none comparable to the mischief likely to arise from a contrary construction.

"The same observations may be made in respect to creditors. If acting in good faith, if not wilfully closing their eyes to the true state of the title, they will rarely be misled in regard to the real ownership of the property. As to them certainly the old rule should prevail, that possession is notice of the equity of the party having such possession.

"But our recording acts make no distinction between creditors with notice and creditors without notice. The former, in this respect, stand upon higher grounds than subsequent purchasers. With us the creditor, at the time he gives the credit, may know his debtor has sold the land, and has received every dollar of the purchase-money; he may sue the purchaser in possession, claiming title, making costly and expensive improvements; he may know that the purchaser has been forced into a court of chancery to obtain the title withheld by the fraud or obstinancy of the vendor; he may know, as in this case, that the property is passing successive alienations into the hands of innocent purchasers; all this he may know, and yet, if the construction now contended for be given to the statute, he may by means of a judgment against the vendor appropriate every acre of the property, every dollar expended upon it to the payment

of his debt. He cannot take a deed of trust or a mortgage, because he becomes thereby infected with notice. But he can accomplish his object by a judgment, which confessedly gives a lien only upon that which belongs to the debtor. This is the class and the only class, so far as I can see, that is to be benefited by this enlarged and liberal interpretation of the statute. The recording acts I admit are founded in wisdom and justice; but it by no means follows that every interest is to be made subservient to the policy of a registration system. It is said in the argument, that Virginia is the only State besides Mississippi, in which the right is conferred upon a creditor with notice of subjecting to his judgment the property in the hands of a *bona fide* purchaser. As the law is written, he must obey it. But for one, I am not disposed to extend it one step beyond what is so written. If the rights of a large class of purchasers recognized by the law as valid are to be sacrificed because of the failure to an act so often impossible to be done, it must be by the declared will of the Legislature in clear and unmistakable language. It is not to be done by any mere rules of interpretation, or by inferences and conjectures as to the intention of the Legislature, founded upon a supposed public policy. Under all the difficulties surrounding this question, who is authorized to speak for the Legislature outside of its expressed will? Who can say that the framers of the statute did not carefully consider all these matters, and after full consideration determine to leave parol contracts just as they were— unaffected by the recording acts. * * *

" We are told, however, that although the statute may not in express terms apply to all contracts for the sale of land, it necessarily leads to that result. For, as is argued, whenever the parol contract is reduced to writing, it becomes merged in the latter, and ceases to operate as a parol contract; and when a deed is executed it satisfies and discharges the contract to convey.

" In the first place, cases are constantly occurring which

rest alone upon the parol agreement partly performed, and no deed or other writing is or has been executed when the creditor brings his suit. In these cases the doctrine of merger can of course have no application; and the whole structure of the agreement upon this point falls to the ground. In the next, place there are other cases, and the present is one of them, when no deed is given until after the judgment is recovered; but the contract is made, the purchase-money paid, the purchaser in possession, and so remaining years anterior thereto. Now if the title of the purchaser is good against the creditor when the judgment is recovered, can it be, the title becomes invalid by reason of the subsequent execution of a deed by the vendor. The bare statement of the proposition is its own refutation. But let us take the strongest case, that of a valid parol contract so far executed as to pass the equitable title, and subsequently a deed of conveyance, which is, however, not recorded, or if recorded at all, not until after a judgment recovered. This is the case as presented in *Withers* v. *Carter*, except that there the contract was in writing, while here in the case supposed it is in parol. But the principle is the same. 'No deed of conveyance (said Judge Baldwin) is necessary to confirm its validity (the executory agreement) and how an abortive attempt to obtain a valid conveyance can destroy the pre-existing title is beyond my comprehension. Nor can I conceive what merger there can be in regard to creditors, of the equitable estate in the legal title by force of a deed, which as to creditors is a blank piece of paper.' Long before the opinion of Judge Baldwin was written, the supreme court of Kentucky had announced the same view in the construction of their acts taken from the Virginia statutes. In *Morton* v. *Robards*, 4 Dana 258, the court said: 'It would be strange to contend that the equity of a holder of a bond is good, yet if he attempted to consummate his legal title, but failed, that he forfeits that equity which he unquestionably could

have held under his bond in case no attempt had been made.'

It will not be denied that these principles apply with equal force to a pre-existing equitable estate acquired under a valid parol contract, as to one held under a written executory agreement. It may be conceded, that when the parol agreement is connected with the deed and is contemporaneous with it, it must be regarded as forming a part of the same transaction. In such case possession would perhaps be considered as taken under the deed and as referrible to it. But where there is a parol agreement, under which the purchaser takes possession, and which of course is valid without deed, no good reason is perceived why the subsequent execution of a deed should either invalidate the title thus acquired, or preclude proof of it in a proper case. The principle of the law of estopple is, that when parties make an agreement, which is afterwards reduced to writing, the former is so far merged in the latter, that parol evidence is inadmissible to establish a variance between them, or to contradict the legal import of the writing. But this rule can have no just application, where the verbal and written agreement correspond in every particular, and the parol proof is offered, not to contradict but to restrain the written agreement. *Mills* v. *Mathews*, 7 Md. 315. Whatever might be the difficulties in a court of law, a court of equity, which regards not the mere form but the substance of things, will enquire into the real nature of the transaction, and limit the lien of the judgment to the actual intent of the debtor."

In speaking of the decision of *Withers* v. *Carter* and the reasoning upon which it is based Judge Staples at page 415, further says: " It is no part of my duty to defend that decision. True it was made by a court of three only; but no abler judges ever sat on this bench; Judges Cabell, Allen and Baldwin. It was made thirty years ago and during all the time that has since elapsed it does not appear to have been seriously controverted.

The Legislature very soon after changed the law ; but the change applied only to future contracts, and left untouched many cases which were necessarily controlled by that decision. If any effort was ever made by the profession to have it reversed there is nothing to show it. The doctrines announced by Judge Baldwin have been repeatedly sanctioned by the highest tribunals in Kentucky and Mississippi in similar cases, and disputed by none that I have seen. We may safely, I think adopt them as our guide in the present case."

At page 416, Judge Staples further says: " If there was ever an occasion, in which the letter of a statute should be adhered to, it is in these cases. There is one other consideration which ought to have its influence. If we are to hold, ' that every contract in respect to real estate ' must be recorded, what is to be the effect upon those titles depending upon implied or resulting trusts, which, though not in writing, are recognized and sanctioned by law ?"

There is no need to discuss this question here, but it may well deserve the attention of those who are so urgent for the policy of a " universal registration."

In the case of *Hicks* v. *Reddick et al.,* 28 Gratt. 418, it was decided as follows: " 1. R. by a verbal contract sells a house and lot to M., who pays all the purchase-money and is put into possession. R. has no interest in the property which may be subjected by attachment against him as an absent debtor to the payment of his debt. 2. After the purchase-money had been paid and M. put in possession, R. sent to M. a deed executed by himself for the property ; but M. insisting that R.'s wife should join in the deed, returned it to R. ; and it was not again delivered. If the deed might be considered as having been excepted by M., that would not render the property liable to the attachment."

In the case of *Borst* v. *Nalle et al.,* 28 Gratt. 423, it was decided as follows: " T., an executor, employs R. to sell a tract of land for him, and to facilitate it, T.

executes a deed to R., but does not deliver it. R. makes a sale to B. and B. pays the money to T., and then T. delivers the deed to R., and at the same time R. executes a deed to B. In a suit by a judgment-creditor of R. against B. to subject the land to pay his debt—HELD:

"1. T. is a competent witness to prove the fact that R. sold as his agent, that the conveyance to him was that he might convey to B., and B. paid the purchase-money to him.

"2. By the conveyance to R. there was an implied or resulting trust in favor of B. who had paid the purchase-money; and this trust may be proved by parol evidence.

"3. The trust having been fully executed by R. conveying the land to B. before this litigation commenced, it seems, that on that ground parol evidence is admissible to establish the trust."

In the case of *Shipe, Cloud & Co.* v. *Repass et al.,* 28 Gratt. 716, it was held.

"1. Where the vendor's lien is retained in a contract for the sale of land, though the contract is not recorded the vendor's lien has priority to that of the judgment-creditors of the vendee.

"2. Where a grantor in a conveyance of land claimed homestead in bonds given for a part of the purchase-money by the grantee and the conveyance is afterwards set aside as fraudulent and void as to judgment-creditors of the grantor, he may claim homestead as against the creditors, in the land or the proceeds of the sale thereof to the amount of said bonds.

"3. Where statute enactments do not interfere, a judgment creditor can acquire no better right to the estate of a debtor than the debtor himself has when the judgment is recovered. He takes it subject to every liability under which the debtor held it, and subject to all the equities which exist at the time in favor of third parties; and a court of equity will limit the lien of the judgment to the actual interest which the debtor has in the estate. See *Floyd, trustee* v. *Harding, supra* 401; *Borst* v. *Nalle et al., supra* 423."

In the case of *Burkholder et al.* v. *Ludlam et al.*, 30 Gratt. —, it was held :

"4. B. who married the daughter of C. bought a lot when he was poor, and C. in good circumstances. B. being unable to pay for the lot, turned it over to C. who paid for it, took the title in his own name, and commenced to build a house on it for his daughter, the wife of B. Before the house was finished B. removed his family to another town and engaged in business, which was succeeding well, when C. offered that upon condition that he would return, he would turn over the lot and unfinished building to the wife of B. as her own property. B. acceded to this, and with his family returned, and he paid the expenses of doing so, and then with his own earnings and that of his wife, finished the building, took possession, and had remained therein for about twelve years; but no deed was made by C. to the property until the insolvency of C. and after judgments were obtained against him and duly docketed. The house and lot was then conveyed to a trustee for the wife of B. in consideration of $5.00 and 'love and affection'. In a suit by the judgment-creditors to annul the deed and enforce their liens. HELD :

" 1. That the title to the house and lot was in the trustee for the use of the wife and children of B. and that the liens of the judgments against C. did not attach to the property.

" 2. A court of equity will compel the conveyance of the legal title of land claimed under a parol gift, supported by meritorious consideration, and by reason of which the donee has been induced to alter his condition and make expenditures of money in valuable improvements on the land."

. In this case Judge Burks, who delivered the opinion of the court, at page 258 says : " The principles of several recent decisions of this court, reported in 28 Gratt. to wit : *Floyd, trustee,* v. *Harding et al.,* 401, 407 ; *Hicks* v. *Reddick et al.,* 418 ; *Bent* v. *Nalle et al.,* 423, 432, 433

*Shipe, Cloud & Co.* v. *Repass et al.*, 716, 723, establish the proposition, that the lot claimed by the appellants is not subject to the lien of the judgments of the appellees, Ludlam, Heineken & Co., and Taliaferro & Musgrove, if, when these judgments were recovered against William Crumpton, the appellants, or either of them, had a valid, equitable title to said lot."

From the cases I have cited from 28 Gratt. and 30 Gratt. it is clear, that the construction of the statute in question is well settled in Virginia by her Court of Appeals. But I must be permitted to say, that great principles of equity which should govern in such cases were in my opinion declared upon authority, in the said case of Withers and Carter, and that in construing the statute in question those principles should govern, when applied to equitable interests in land based upon parol contracts executed by possession, &c., and so applying them it should not be held, that the last named equitable interests in land are avoided by the statute as to subsequent judgment-creditors. I regard the said cases which I have cited in 28 and 30 Gratt. as but carrying out and applying principles decided in the said case of Withers and Carter. I have collected authorities and elaborately considered the principles involved in this case, because of the great importance of the questions involved, and because, so far as I recollect, the questions involved in this case have not heretofore been directly passed upon by this Court in any cause, where the question was fairly before it for decision.

Applying the principles of equity, which should govern under the statute, to the facts admitted and proven in the case at bar, it seems to me that the court erred in its said decree of the 17th day of May, 1878, in ascertaining and determining that the judgment in the bill and proceedings mentioned was then a good, valid and subsisting lien upon the "Chapman land" in the petition and proceedings mentioned as against the equitable title held by the said A. McNeer, and as against the claims

1880
Special Term.
———
Pack
v.
Hansbarger
et al.

of the said petitioners, and in refusing for that reason to set aside the decree of sale of said land as prayed in the said petition of R. J. Crebbs and H. M. Piles filed in the cause. And so much of the last named decree as ascertains and determines that the judgment in the bill and proceeding mentioned is, or was at the date of said decree, a good, valid and subsisting lien upon the said "Chapman land," called in the said petition of R. J. Crebbs and H M. Piles filed in the cause the "Fink place" or "Chapman land," as against the equitable title held by A. McNeer and as against the claim of the petitioners, R. J. Crebbs and H. M. Piles, must therefore be set aside, reversed and annulled; and the appellants R. J. Crebbs and H. M. Piles must be awarded their costs about their appeal and *supersedeas* in this Court expended against the appellee Augustus Pack. And this Court proceeding to render such decree in the cause, as the said circuit court should have rendered as to said land upon the facts proven and the rules and principles of equity applicable thereto, it is adjudged, ordered and decreed, that the plaintiff's said judgment in the bill and proceedings mentioned, is not a lien upon said "Fink place" or "Chapman land" in said petition mentioned; and that so much of the decree of the said circuit court rendered and entered in this cause on the 17th day of October, 1877, as authorizes or directs in any manner the sale of said last named tract or parcel of land by commissioner James F. Patton, be and the same is hereby set aside, rescinded and annulled, and that the plaintiff's bill be dismissed as to the said tract of land and as to the said petitioners and defendants, R. J. Crebbs and H. M. Piles, and that the plaintiff, Augustus Pack, do pay the said R. J. Crebbs and H. M. Piles their costs about their said petition and defence of this suit expended. And it is further adjudged, ordered and decreed that this cause be remanded to the said circuit court of the county of Monroe for such fur-

ther proceedings to be had therein as are in accordance with the principles and rules governing courts of equity.

JUDGES GREEN AND MOORE CONCURRED.

JUDGE JOHNSON DISSENTED FOR REASONS STATED IN HIS OPINION IN *Snyder* v.*Martin et al.*

JUDGMENT REVERSED. CAUSE REMANDED.